MATTIE BRITT et al., Respondents v. SOVEREIGN
CAMP WOODMEN OF THE WORLD, Appel-
lant.

Kansas City Court of Appeals, February 13, 1911.

1. FRATERNAL BENEFICIARY ASSOCIATIONS:    Forfeitures.
The contract between the deceased husband of plaintiff, and the
defendant, a fraternal beneficiary association, contained stipula-
tions that provided automatically for his suspension from mem-
bership, and the forfeiture of his insurance, if he failed to pay
his dues within a stated and very limited period. Deceased
failed to pay such charges for at least five months. Defendant,
however, failed to give notice of assessments, and timely notice
of a suspension of deceased. The defendant's local lodge more-
over assured plaintiff that pursuant to a custom authorized by
defendant, no suspension or forfeiture would be declared during
her husband's illness. Held, although but for these facts, the
delinquency of the husband would have *ipso facto* destroyed his
membership, and forfeited his beneficiary certificate, defendant
could not declare a forfeiture on account of the non-payment of
such charges, at least until it had notified the husband of its
decision to carry him no longer, and had given him a reasonable
opportunity to pay his arrearages.

2. ———: Notice of Assessments. Where defendant elected to
treat regular fixed assessments as assessments to be levied by
the sovereign camp in the form and manner prescribed for levy-
ing irregular assessments, it should be held to its own charac-
terization of the assessments in controversy, and since it
treated them as special assessments, they should be so regarded
and defendant should be held to the performance of the stipula-
tion requiring the giving of notice.

3. ———: Forfeitures: Repudiation of Lodge's Custom. Where,
pursuant to a uniform custom known to and approved by the
sovereign camp, the local lodge assured plaintiff that her hus-
band's assessments and dues would be paid during his illness,
it would be shocking to conscience to permit defendant to re-
pudiate that agreement at a time when the defendant saw that
a loss was impending and when it was too late for the member
to help himself.

Appeal from Jackson Circuit Court.—*Hon.  W.  O.
Thomas*, Judge.

AFFIRMED.

*James W. Garner, Hunt C. Moore* and *A. H. Burnett* for appellant.

(1) Parties to a contract of insurance are free to insert in it whatever condition they please, providing there be nothing in them contrary to the law or public policy. 2 Bacon on Benefit Societies, sec. 352, p. 880; Kennedy v. Grand Fraternity, 36 Mont. 328. These authorities further declare that the time fixed for the payment and the time at which the policy is to become void is of the essence of the contract and no notice of lapse is necessary. (2) Stipulations in a contract that non-payment of assessments shall *ispo facto* work a forfeiture, and a failure to pay at the time stipulated works a forfeiture of the certificate. Lavin v. Grand Lodge, 104 Mo. App. 1; Boergrafe v. Knights of Honor, 22 Mo. App. 127; Ellerba v. Faust, 119 Mo. 653; Lavin v. Grand Lodge, 112 Mo. App. 5; Messenback v. Maccabees, 139 Mo. App. 76; Gruwell v. K. & L. of S., 126 Mo. App. 496; Boyce v. Royal Circle, 99 Mo. App. 349. The certificate sued upon in this cause is subject to all of the laws, rules and by-laws of the appellant, and they are made a part of the certificate. Richmond v. Supreme Lodge, 100 Mo. App. 8; Leech v. Order of R. R. Tel., 130 Mo. App. 5; Lloyd v. M. W. A., 114 Mo. App. 283. (3) The notice of suspension, the evidence shows, was promptly sent, and was in compliance with the by-laws introduced in evidence by the respondent. Pierre v. Heinrichschofen, 67 Mo. 165; Rolla v. State Bank, 95 Mo. App. 405; Ward v. Transfer & Storage Co., 119 Mo. App. 89. (4) These provisions of the contract were binding upon Britt and are subject to the same rules of construction as contracts generally. Levine v. K. of P., 122 Mo. App. 547; Morton v. Supreme Council, 100 Mo. App. 76; State v. Benefit Association, 72 Mo. 146; Walsh v. Hill, 38 Cal. 481; Burner v. Wheaton, 46 Mo. 363. (5) Custom does not govern where there is a contract in conflict with such customs. In

such a case the contract does away with the custom and the liabilities of the parties are controlled by the contract. Landa v. Bank, 118 Mo. App. 356; Bolton v. Railroad, 172 Mo. 92.

*E. W. Shannon* and *E. L. Snyder* for respondents.

(1) A prima facie case was made for plaintiffs and the defendants assumed the burden of proof. "The certificate issued to the member is evidence of good standing; . . . status once fixed is supposed to continue until the contrary is shown." Johnson v. W. O. W., 119 Mo. App. 98; Mulroy v. Supreme Lodge, 28 Mo. App. 463. "The delivery of the policy sued on put in force a contract good for a lifetime and the contract could not be forfeited by failure to pay subsequent premiums." McMasters v. Ins. Co., 90 Fed. 40; Gruwell v. National Council, 126 Mo. App. 496. "No forfeiture can be established except for a violation of the precise conditions laid down" and "no presumption will be entertained." Bacon Ben. So. (3 Ed.), sec. 377; Earney v. M. W. A., 79 Mo. App. 383; Puschmann v. Ins. Co., 92 Mo. App. 640; Hannum v. Waddell, 135 Mo. 153; King v. Ins. Co., 133 Mo. App. 612. (2) The appellant attempted to show a notice of suspension, but Mrs. Britt said that no such notice was received by Mr. Britt until a few days before his death and that she went at once to the clerk, Werner, to make such payments as might be required. This raises an issue for the jury, which was submitted to the jury and passed on adversely to appellant. Hannum v. Waddell, 135 Mo. 153. (3) It is well settled that the law abhors forfeiture and will relieve against it if possible, and this rule applies to certificates of membership issued by associations such as defendant. Burchard v. Western Com. Ass'n, 139 Mo. App. 606. The defendant cannot complain because this issue was submitted to the jury, for the defendant asked to have that question of controvert-

ed fact submitted to the jury. Hopkins v. M. W. A., 94 Mo. App. 402. If Mr. Britt had funds in the hands of the local camp sufficient to have paid the assessment claimed for November, 1907, then such sum should have been applied to prevent a forfeiture. Supreme Lodge v. Welch, 60 Kan. 858; Elliott v. Grand Lodge, 2 Kan. App. 430; Purdy v. Bankers Life, 101 Mo. App. 91; Supreme Lodge v. Meister, 68 N. E. 454; Fra. Aid Assn. v. Powers, 67 Kan. 420. Demings v. Sup. Lodge, 48 N. Y. S. 649; King v. Ins Co., 133 Mo. App. 612. If he was wrongfully suspended it rested on the defendant to show that Mr. Britt was notified of such suspension and that notwithstanding such notice Mr. Britt failed to take any action toward setting aside such wrongful suspension and manifested an intention to abandon his membership. Bange v. Legion of Honor, 128 Mo. App. 461; Meisenbach v. Maccabees, 140 Mo. App. 76. A levy of subsequent assessments waives any former forfeiture. Beatty v. Mutual Reserve, 75 Fed. 65; Mee v. Bankers Life, 54 Ill. App. 445; M. W. A. v. Anderson, 71 Ill App. 357; M. W. A. v. Jameson, 48 Kan. 718.

JOHNSON, J.—Plaintiffs, the beneficiaries of a death benefit certificate issued by defendant May 16, 1906, to Edward Britt, commenced this suit in the circuit court of Jackson county to recover the amount alleged to be due them under the terms of the certificate. It is conceded that Britt died May 6, 1909, and that defendant refused to recognize the demand of plaintiffs as a valid obligation. The cause pleaded in the petition is stated as one founded on an ordinary life policy. The answer admits the defendant issued its beneficiary certificate to Edward Britt, payable to plaintiffs in the event of the death of the holder, but alleges that defendant is a fraternal beneficiary association, incorporated in Nebraska and authorized to do business in this state, and that Britt, at the time of his death, had ceased to be

a member of the association and had forfeited the certificate because of his failure to pay certain assessments levied in accordance with defendant's constitution and by-laws, which constituted a part of the contract of insurance. The answer is voluminous and we need not comment further on it than to say it was sufficient to raise the issues we shall discuss. The case was tried before a jury and the cause is before us on the appeal of defendant from a judgment recovered by plaintiffs.

The evidence discloses—and the court so instructed the jury—that defendant, during the period of the transaction in controversy was a fraternal beneficiary association authorized to do business in this state. It has a lodge system with ritualistic form of work, a representative form of government, and issues benefit certificates in accordance with its constitution and laws. Its head lodge and office is in Nebraska, but it has branch lodges or "camps" scattered over the country, among them "Oakwood Camp No. 82," in Kansas City of which Britt became a member.

The certificate issued to Britt stated that it was "issued and accepted subject to all the conditions on the back hereof and subject to all of the laws, rules and regulations of this fraternity now in force or that may hereafter be enacted, and shall be null and void if said sovereign does not comply with all of the said conditions and with all of the laws, rules and regulations of the sovereign camp of the Woodmen of the World, that are now in force or which may hereafter be enacted, and with the by-laws of the camp of which he is a member."

The by-laws gave certain sovereign officers authority to levy assessments to pay death losses, etc., and provided in addition that "Every member of this order shall pay to the clerk of his camp each month one assessment . . . which shall be credited to and known as 'Sovereign Camp Fund' and he shall also pay such camp dues as may be required by the by-laws of

his camp. He shall pay any additional assessments for the sovereign camp fund and camp dues or either which may be legally called."

The failure to pay any such dues or assessments on or before the first of the month following *ipso facto* suspended the member and the by-laws provided that "during such suspension his beneficiary certificate shall be void." The regular monthly assessment the certificate required Britt to pay was $2.05, to the sovereign camp fund and dues to the local camp of twenty-five cents.

The suspension of Britt from membership in the order and the forfeiture of his certificate were and are claimed by defendant to have resulted from his failure to pay regular assessment No. 206 due November 1, 1907. Plaintiffs contend that he paid that assessment but it is conceded that none of the subsequent monthly assessments were paid. Although such assessments were regular and definite, it appears to have been the custom of defendant to observe the same formalities with respect to them as were provided in the laws for levying other assessments. On October 20, 1907, the sovereign clerk was notified in writing by the sovereign command-er and the chairman of the sovereign finance committee "that one assessment was necessary to be collected from all members during the month of November, 1907." On receipt of this notice the sovereign clerk sent out a notice of the assessment to the clerks of the local camps, including the clerk of Oakwood Camp No. 82. In this notice the clerk was requested "to mail to the last known postoffice address or deliver to every member of your camp on or before the 5th day of November, 1907, a reminder to pay said sovereign camp fund assessment and camp dues." It was the practice of the local clerks to send out notices to the members in obedience to these requests from the sovereign clerk. Such was the method followed with respect to the regular assessment for the months intervening between assessment No. 206 for

November, 1907, and the death of Britt which, as stated, occurred in May, 1908. The answer pleaded "that the said Edward Britt did fail to pay said assessment for the said month of November, on or before the first day of December following, and by reason of his failure to pay the same, his certificate became null and void and he was on that day suspended and is not entitled to recover in this action . . . and that although assessments have been regularly made each month since the first day of December, 1907, up to and including the date at which the said Edward Britt died, he has never paid any monthly assessment, nor has anyone else paid it for him."

The laws gave a member who was suspended for the non-payment of assessments or dues ten days from the date of his suspension in which to be reinstated, and required the sovereign clerk to mail a written notice of suspension to the delinquent member, but provided that "the failure to send such notice shall in nowise affect the legal suspension of such member."

The evidence of defendant is to the effect that notices of the assessments from November, 1907, to the time of the death of Britt, were mailed to him and that he received them, and that a suspension notice was mailed and received by him. This evidence is contradicted by that of plaintiffs. Britt was sick during the entire period and was confined to his bed from January, 1908, to his death. His wife received all his mail and she states that no notices of assessments and no notices of suspenion were received until three days before her husband died. She called at once on the clerk of the camp and offered to pay all arrearages of assessments and dues, but the clerk refused to receive such payment except on the impossible condition that she produce a certificate of good health from the camp's physician.

The evidence of plaintiffs tend to show that both Britt and his wife supposed—and rightly so—that he had not been and would not be suspended for the reason that his assessments and dues were being paid by his camp during the protracted period of what proved to be his last illness. It appears that one of the vaunted fraternal features of the association was the custom of local camps (known to and approved by the sovereign camp) to come to the aid of disabled and distressed members by paying their sovereign camp assessments and dues until they could get on their feet. This custom was known to Britt and relied on by him. Early in November, Mrs. Britt went to the clerk of the camp and said to him (so she testifies):

" 'Mr. Werner, I don't know when I will be able to pay any more. Mr. Britt is sick in the hospital and I would like you to notify your lodge members to that effect. . . .' Mr. Werner replied, 'I called in the lodge last Wednesday night and they will take a vote on it next Wednesday night.' " Mrs. Britt then continued: "I have my father and mother and little baby to take care of and I can't possibly take care of these" (assessments).

At this time Britt was "sovereign" of the local camp and the camp records show he remained in that office and was recognized as sovereign until in January, 1908, when his successor was elected.

There are other facts in the record tending to show that the local camp carried Britt and that the sovereign camp did not move to suspend him until he stood in the shadow of death. All such facts are contradicted by the evidence of defendant, but as the evidence of plaintiffs is substantial, the two principal questions for our solution are, first, Does the record present issues of fact

for the jury to determine? and, second, If it does, were such issues correctly defined in the instructions of the court?

Our answer to the first question is that the pleadings and evidence do present issues of fact which, if solved in favor of plaintiffs would entitle them to the judgment before us. Fraternal beneficiary associations are regarded as beneficent in their purposes and have been the recipients of legislative and judicial favor. Courts recognize prompt payment of assessments and dues as necessary to their existence and the equitable administration of their affairs and uphold stipulations in their laws imposing the penalty of suspension from membership and forfeiture of all membership rights on the member who fails to pay such charges in the time and manner prescribed by such regulations. But the law never looks with favor on forfeitures and when one is claimed by a fraternal beneficiary association the law requires the claim of forfeiture to be based on the violation by the member of a precise condition laid down in the contract between the association and the delinquent member. [2 Bacon on Benefit Societies and Life Insurance (3 Ed.), sec. 377.]

The contract between defendant and Britt consisted of the beneficiary certificate issued to him and of defendant's constitution and by-laws which, by agreement, were made a part of the certificate. This contract contained stipulations that automatically provided for his suspension from membership and the forfeiture of his insurance if he failed to pay his assessments and dues within a stated and very limited period. He failed to pay such charges for five months and possibly for six months and, but for other facts to which we shall refer, we would hold his delinquency *ipso facto* destroyed his membership and forfeited his beneficiary certificate.

The contract contemplated and provided for two kinds of benefit assessments, one a regular monthly assessment, and the other such additional assessments as the sovereign body might find it necessary to impose from time to time for the purpose of paying death benefits and other proper expenses. The by-laws properly provided for giving members timely and proper notice of what might be termed irregular assessments, but contained no express requirement that such notice should be given of regular monthly assessments and dues. Nor was it necessary that the by-laws should require that notice of regular assessments and dues be given. We quote approvingly the following excerpt from the opinion of the St. Louis Court of Appeals in Lavin v. Grand Lodge, 104 Mo. App. 1. c. 17:

"The regular assessments levied by the defendant order to pay death losses are classified according to the age of the members. They are monthly and payable on or before the twenty-eighth day of each month. They are as regular as clockwork, are certain as to amount and time of payment, hence no special notice of their levy or of the amount or time of payment was necessary. A member holding a beneficiary certificate of the order, receives this notice once for all when he receives the certificate which in effect, incorporates this law of the order into the contract of insurance, and a member, by accepting the certificate, agrees to pay the monthly assessments as required by law 196, as a condition precedent to the continuance of his certificate in force. That it is competent for a beneficiary association, and a member thereof to so agree, it seems to us admits of no doubt and that such an agreement is just and fair to all the members of the order holding insurance certificates, is self-evident."

But this rule applied to the facts of the case in hand did not relieve defendant of the duty of giving Britt notice of the assessments in question for the reason that defendant elected to treat such assessments

not as regular, fixed charges on its members, but as assessments *to be levied* by the sovereign camp, in the form and manner prescribed for levying irregular assessments. It seems to have been in the contemplation of the head camp that even some regular assessments might be unnecessary and, consequently, on the 20th day of every month the officers charged with the duty of levying assessments met and made the approaching regular assessment the subject of a special levy and required the sovereign clerk to cause notice of the assessment to be given the members.

In other words, they converted regular charges into special charges. This practice was known to the members and, that it was relied on as a settled course of business, is made evident in the evidence of defendant which makes much of the contention that such notices in full were given to Britt.

In such state of facts, we think defendant should be held to its own characterization of the assessments in controversy and, since it treated them as special assessments, we should so regard them and hold defendant to performance of the stipulation requiring the giving of notice.

"A member of such society is presumed to know its laws, and the contract of insurance is to be construed as having been made under the limitations of those laws. But a member has a right to look to the general conduct of the society itself in respect of the observance of its laws, particularly those relating to his own duties, and if the society by its conduct has induced him to fall into a habit of non-observance of some of its requirements, it cannot without warning to him of a change of purpose, inflict the penalty of strict observance." [McMahon v. Maccabees, 151 Mo. 522.]

And, further, we think the evidence of plaintiffs strongly tends to show that the automatic suspension of Britt and the forfeiture of his certificate were arrested by the undertaking of the local camp to pay his assess-

ments and dues and that such undertaking was in accordance with a uniform custom known to and approved by the sovereign camp and that defendant did not attempt to violate this custom until it perceived that a loss was impending. These facts bring the case squarely within the doctrine of Burke v. Grand Lodge, 136 Mo. App. l. c. 459, where we said:

"The subordinate lodge, unlike a stranger, was under the supervision and control of the grand lodge. The grand lodge could interdict the custom and put the local lodge under ban if it disobeyed. It had the power and exercised it of regulating and controlling its subdivisions and their members. It would be unjust and inequitable to say that the grand lodge might receive the benefits from a custom in derogation of its laws and then repudiate the obligations necessarily resulting from such custom. The effect of its approval of the custom was to say to Burke: 'The grand lodge encourages the beneficent practice of your local lodge of preventing suspensions and forfeitures by giving aid from its treasury to its unfortunate but worthy members. You need not fear a forfeiture if you bring yourself within the pale of this custom.' We have here all the elements essential to a waiver. The course of dealing of the subordinate lodge became the course of dealing of the head lodge. Burke had a right to rely on it and to act on the supposition that he would not be summarily deprived of this important benefit without notice. On the hypothesis of facts presented by the evidence of plaintiff the automatic forfeiture of the insurance provided in law 197 was destroyed by the custom under consideration and no suspension or forfeiture could be declared without notice to the member."

If, as plaintiffs' evidence goes to show, the local lodge pursuant to this custom, assured Mrs. Britt that her husband's assessments and dues would be paid during his illness, it would be shocking to conscience to permit defendant to repudiate that agreement at a time

when it was too late for the member to help himself. If, on account of defendant's failure to give notice of assessments and timely notice of a suspension and of the assurance of the local lodge that, pursuant to a custom authorized by defendant, no suspension or forfeiture would be declared during his illness, Britt was lulled into a feeling of security and failed to pay his assessments and dues, defendant could not declare a forfeiture on account of the non-payment of such charges, at least not until it had notified him of its decision to carry him no longer and had given him a reasonable opportunity to pay his arrearages.

The court committed no error in sending the case to the jury.

Passing to the second proposition, we find the intructions, which are numerous and lengthy, correctly define the issues of the case and are in accord with the views just expressed. We do not find it necessary to lengthen this opinion by further reference to them. The case was fairly tried and the judgment is affirmed. All concur.