MARGARET HOTCHKISS, Respondent, v. SU-PREME LODGE KNIGHTS OF PYTHIAS, Appellant.

Kansas City Court of Appeals, February 16, 1914.

FRATERNAL BENEFICIARY ASSOCIATIONS: Benefit Certificate: Agreement: Waiver: Notice. Where a local lodge of a fraternal society, under authority of its by-laws, contracted to pay the monthly dues of one of its members who held a benefit certificate of life insurance and did pay such dues through a part of three separate years and up to two months of his death, it waived its right to a forfeiture for nonpayment of those two months unless it notified the assured that it would no longer pay.

Appeal from Jackson Circuit Court.—*Hon. Frank G. Johnson*, Judge.

AFFIRMED.

*Edmund H. McVey* and *F. T. Burnham* for appellant.

*Park & Brown* for respondent.

ELLISON, P. J.—Plaintiff's action is founded on a benefit certificate of life insurance issued to her deceased husband. She prevailed in the trial court.

It appears that deceased had been a member of defendant society since the year 1880 and that defendant issued a certificate to him in 1888 for the sum of $3000 payable to plaintiff at his death. Afterwards,

in January, 1907, that certificate was surrendered and the one now in suit was issued for the same amount, also payable to plaintiff. Deceased died in February, 1911. Defendant refused payment on acount of its claim for a forfeiture for nonpayment of the monthly assessments for the months of December, 1910 and January, 1911. The law of the society required payment of monthly dues on the first of each month, and provided that if such failure continued to the 20th of the month, a forfeiture occurred and the membership ceased *ipso facto*. Plaintiff avoids this defense on the ground that payments as provided were waived by defendant.

It was provided in the by-laws of defendant that if a member remained with it in good standing for a period of five years and then by misfortune became unable to pay his monthly dues, the lodge of which he is a member may itself pay such dues as they accrue, by taking an agreement from the member giving the lodge a lien for such payments on the insurance. After deceased had been a member of the society more than five years, towit, on the 16th of January, 1907, he became disabled to pay and a contract of the character just mentioned was entered into. Two payments were made for him by the society before the date of this contract and many were made afterwards. Beginning on the day of the date of the contract, the society paid his dues for the months of January, February and April, 1907. Again becoming disabled, the society made monthly payments for him for six months in 1909 and eleven months down to November 23, 1910, a few days more than two months before he died; and it was for the intervening two months, December, 1910 and January, 1911, as above stated, that the forfeiture was declared. On the 16th of August, 1909 in answer to a letter from deceased, Miller then the secretary wrote to him that "They (the lodge) paid your assessment and will continue to do so until you are able to

pay yourself.'' Again, on November 22, 1909, he wrote to deceased that, ''Your insurance and lodge dues are being paid by the lodge, so you need not worry about that. If any thing should happen, I will notify you, but there will be no trouble about that.''

It seems that about a year after this letter (November 27, 1910) Miller died and a new secretary came in. The defense is that the two months following Miller's death, is the time when the society changed its mode of dealing and refused to make further payments for deceased and that the new secretary so notified him. Whether defendant notified deceased of its refusal to make further payments for him was an issue of fact bearing directly on the right of forfeiture. It was so submitted to the jury in plaintiff's first instruction and the only question we need concern ourselves about is in regard to the evidence on that issue. The new secretary testified that in the latter part of November, 1910, he wrote deceased that the lodge would not pay for him any further; and that the latter answered that he had ''decided to drop it, for I can't carry it myself and I can't get anyone to carry it for me, for none of my folks will carry it for me.'' But, singular to say, neither of these letters, nor a copy, was produced. The date they were said to have been written was only a little while prior to deceased death. He was quite old and naturally coming to the time when the face of the policy would be due his widow. He had struggled with payments for more than thirty years, and to give up at the close was, at least, unfortunate. It was enough to cause scrutiny of the statements that he had. Plaintiff knew nothing of such letters, the one said to have been written her husband was not among his effects. The jury had a right to marvel at the unreasonable business method of the secretary in failing to keep a copy of his letter and to preserve the original of the one deceased wrote.

His testimony was addressed to the belief of the jury and they had a right, as triers of the facts, to reject it.

Taking the case thus presented there was undoubted evidence that deceased was relieved by the society of the forfeiture for nonpayment of monthly dues until he should have been notified to the contrary; and unless notified, his nonpayments were waived. [Oldham v. Brotherhood, 170 Mo. App. 564; Britt v. Woodmen, 153 Mo. App. 698; Burke v. Grand Lodge, 136 Mo. App. 450.]

It is said that the officers of the "insurance section" of defendant had no authority to waive a forfeiture and that a waiver through such a source must have been known to the Supreme Lodge to become effective. It will not aid defendant if we concede this, for the evidence, including legitimate inferences to be drawn therefrom, is abundant, that the conduct and dealing between deceased and the local lodge officers must have been known to defendant.

Connected with the last is the complaint of the admission in evidence of the contract agreeing to pay deceased's dues. We can not see any reasonable basis for this objection. It seems to be grounded on the statement that the local lodge and this defendant are separate and distinct entities. We need not endeavor to find out the exact relation the defendant bears to each of its parts which, together, constitute the whole. Defendant is an institution that has an insurance branch. It has put forward that branch of itself to benefit its members. It receives the money from the business carried on by that branch. [Westerman v. Supreme Lodge K. of P., 196 Mo. 670, 701.] It received deceased money through its insurance section for more than thirty years and we are not disposed to credit its assertion of lack of knowledge of what was done between that section and him. If it had any supervision of its branches at all, it must have known what was done. In fact, defendant's laws show that

its insurance department within the line of insurance, was itself. One of those laws reads, that "The words 'Insurance Department' and 'The Supreme Lodge Knights of Pythias Insurance Department', shall mean the same as the words 'The Supreme Lodge Knights of Pythias', restricted only and relating solely to the insurance department of the Supreme Lodge Knights of Pythias. Another of defendant's laws provided for a "board of control which shall have full charge and complete control of the business and affairs of the insurance department, subject at all times and in all things to the direction of, and to account and report to the Supreme Lodge Knights of Pythias."

It is also said, in aid of this objection, that there was no evidence that this agreement was sent to the defendant's board of control as is required by its provisions. There is a provision requiring a copy to be furnished that board within thirty days. But manifestly that was a duty cast upon the lodge and not on the member. It was enough on part of the member that he executed the contract and returned it to the lodge, whereby its lien for advances was secured. Manifestly the duty to send to the board of control was on the lodge and not on deceased, and was not intended as a thing to be done as a condition precedent to the contract taking effect.

The instructions for plaintiff are not subject to criticism. Defendant asked none save a demurrer.

We have gone over the other objections made to the judgment and urged by defendant. We do not find fault with most of the propositions of law suggested. But on the facts as we have set them out, and the circumstances disclosed by the record, we regard the defense as without foundation, and therefore believe the judgment manifestly to be for the right party, and it is therefore affirmed. All concur.