[Civ. No. 5092. First Appellate District, Division Two.—March 5, 1925.]

## M. W. GARRATT et al., Respondents, v. AUTOMOTIVE FINANCE CORPORATION et al., Defendants; R. H. JONES et al., Appellants.

[1] TRIALS — EVIDENCE — ACCEPTANCE OF STATEMENTS LITERALLY — PROVINCE OF TRIAL JUDGE.—The trial judge is not obliged to accept literally the statements of any witness when other matters in connection with the testimony of that witness create a grave doubt as to the entire testimony.

[2] ID.—WEIGHT AND CREDIBILITY OF TESTIMONY—PROVINCE OF TRIAL COURT—FINDINGS—APPEAL.—It is the duty of the appellate court to uphold the findings of the trial court wherever possible; and, as the trial court, from its personal contact with the witnesses, is better able to judge of truth than is the appellate court, neither the inclination nor the duty of the appellate court permits it to reverse the judgment of trial court when the appellate court's impression from the printed record is in harmony with the conclusion drawn by the trial court from its point of vantage.

[3] ID.—FORECLOSURE OF VENDOR'S LIEN—BONA FIDE PURCHASER FOR
VALUE — EVIDENCE — FINDINGS. — In this action to establish and
foreclose a vendor's lien upon certain real property, while no
specific thing or things warranted the conclusion of the trial
court that the record owner of the property, to whom it had
passed by mesne conveyances, took the property without con-
sideration and with knowledge of the facts relating to the unpaid
purchase price for the same, the entire record, each part taken in
connection with each other part, compelled such conclusion.

(1) 38 Cyc., p. 1945, n. 35, 36.   (2) 4 C. J., p. 879, n. 83.   (3) 39
Cyc., p. 1784, n. 9, 10, p. 1785, n. 11.

APPEAL from a judgment of the Superior Court of
Sonoma County. Ross Campbell, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. F. Cowan, P. A. Vincilione and A. W. Hollingsworth
for Appellants.

Marcel E. Cerf, C. H. Sooy, Martin P. Bruton and Geary
& Geary for Respondents.

LANGDON, P. J.—Plaintiffs brought an action to estab-
lish and foreclose a vendor's lien upon certain real property
situated in Sonoma County, California. In substance, it was
alleged that this property had been conveyed to the defend-
ant Automotive Finance Corporation upon the agreement of
said corporation to pay four thousand dollars for the same
to the plaintffs; that no part of said purchase price had
ever been paid, that the other defendants were successive
grantees of this property, without consideration and with
knowledge of the facts relating to the unpaid purchase price
of the same.

The trial court found the facts to be substantially as
alleged and gave judgment for the plaintiffs establishing and
foreclosing their vendors' lien. The defendant R. H. Jones
has appealed from this judgment. The only question pre-
sented by the record is whether the court was justified by
the evidence in finding, in effect, that Jones was not a pur-
chaser in good faith, for value without notice of the equities
of the plaintiffs.

Ordinarily, when an attack is made upon the correctness of findings, it is customary for this court to review in its opinion the specific evidence justifying the trial court's action; but in the instant case it is impossible to give an adequate idea of the general effect and the pronounced atmosphere of this record without copying into this opinion each and every portion of it. It is because isolated portions of the record in and of themselves, perhaps, do not sustain the findings that the appellant is able to make a plausible argument by considering numerous statements appearing in the record, taken out of their general setting. But there is something more vital and more trustworthy in arriving at truth than a literal acceptance of segregated portions of a record upon appeal. This is demonstrated by the record before us here. The testimony of the appellant with its positive assertions about a few matters calculated to constitute him an innocent purchaser for value, and its uncertainties, its vagaries, its indirectness and incoherence in other particulars, and, above all, its direct opposition in innumerable particulars to the testimony of Kemp with relation to the same matters, creates an impression, an atmosphere, as it were, which is unescapable. It doubtless so impressed the trial judge and influenced his conclusions. [1] He was not obliged to accept literally the statements of any witness when other matters in connection with the testimony of that witness created a grave doubt as to the entire testimony.

Simply, the story of this action is about as follows: The plaintiffs are husband and wife. They owned a mountain ranch in Sonoma County. The husband had an acquaintance with the defendant Kemp, who was an automobile salesman employed by the Automotive Finance Corporation, of which one Herrick was the president. Kemp undertook to sell Garratt's ranch for a commission. He wrote to Garratt that he would bring a prospective purchaser to examine it. He brought Herrick. The two spoke, largely, of their profitable business and their huge earnings and displayed a check for "thousands of dollars"; spoke of a "Cadillac" automobile owned by Herrick's wife which was too splendid a conveyance for mountain use, of Herrick's wealth and his purchase of other real property. In short, they used all

the cheap, gaudy means of impressing the unsophisticated. The result of their efforts was that Garratt deeded his ranch to Herrick's company and accepted in payment therefor merely the unsecured notes of this company. If this company was not then in financial distress it became so shortly thereafter, and at the time of the trial of this action its affairs were being administered by a trustee for its creditors. This "successful deal" was manipulated with as much speed as skill, and Herrick and Kemp returned to San Francisco the same night, after having stopped upon their way home at Santa Rosa to have the deed recorded. But the details of their acquisition of the property are not of great importance here. They have not appealed from the judgment and no one before this court has attempted the impossible task of covering their part in this transaction with any veneer of fair dealing.

Garratt discovered his mistake in a day or so, after discussing the matter with his bank, and he came to San Francisco and attempted to get some security for the notes which had been given him, but this was refused by Herrick. About a month later Kemp and Herrick were about to sever their business relations. Herrick claimed that about three hundred dollars was due Kemp for commissions earned. Kemp's account of the matter is so varied in the record that we are unable to state what it is. At one place he claimed about two thousand nine hundred dollars, although this is almost twice what he stated at other portions of the record was due him. At any rate, there was no money available to pay him anything and Herrick, as president of the Automotive Finance Corporation, signed a deed of the Garratt ranch conveying the same to Kemp. Herrick claimed this was done to enable Kemp to borrow five hundred dollars upon the property and retain three hundred dollars due him and pay over the balance to the company; Kemp insisted that the property was given him, absolutely, in payment of this elastic amount of his commissions, which even at its highest estimate was about six hundred dollars less than the amount which Herrick had promised to pay Garratt for the property. Later Herrick attempted to have Kemp arrested for his alleged breach of trust in mortgaging the property for fifteen

hundred dollars, but that phase of the matter does not concern us here. We shall follow Kemp: He took this deed, which was defective in being signed only by the president of the corporation when it recited upon its face that the corporation had authorized the president and secretary to sign the same, and called at the office of his uncle, an attorney at law. He did not find that gentleman at his office, but he found another attorney who has been called his "partner" in the record. Kemp explained to this attorney his pressing need for money and his desire to mortgage this property and the attorney offered to take him to a client of his. He did so, and in this client we meet the defendant Jones. True, Mr. Jones is not bound by all we have heretofore stated, but we can better understand his activities when we have a picture of the scene upon which he enters. Mr. Jones has never seen the real property in question; he does not know Mr. Kemp. He is a different type of man from the former actor, Mr. Garratt. Mr. Jones is an attorney at law, practicing in Chinese exclusion cases at Angel Island; he loaned money at one per cent a month, secured by first mortgage upon real estate; he stated that he sometimes held property for people in trust. For thirty years he has been engaged in such activities, so we must credit him with considerable worldly wisdom and experience. But for a moment or so, at least, he is naively trusting. Mr. Kemp tells him that he has been offered a loan of two thousand five hundred dollars upon the property, but that he did not like the amount nor the term for which the loan was to run and so he is seeking a fifteen hundred dollar loan from Mr. Jones. Mr. Jones, although he has never before seen Mr. Kemp and had never seen the land, deduced from this assertion that the property was easily good security for a fifteen hundred dollar loan. He asked Kemp if he had borrowed any other money on the property and upon Kemp's statement that he had not, Jones also accepted that as a fact and without further investigation concluded to loan the money at one per cent a month interest. Kemp bought a blank form of mortgage, submitted it to Mr. Jones' attorney after it had been filled out and Jones states he advanced fifteen hundred dollars. But by this time his caution and business experience had

returned to his aid and he did not do the obvious and simple thing. He drew this money out of the safe deposit box, according to his statement, and although Kemp desired the cash immediately (not exactly a "rush act," Jones says, but decidedly a hurried proceeding), Jones purchased a cashier's check with the money and then introduced Kemp and had the check cashed immediately. The check was available as evidence in this case and seems to settle the matter according to the appellant's view. Jones says Kemp received the proceeds of that check and Kemp agrees in this statement. Kemp did not deposit this money anywhere and it left no trace so far as this record is concerned. It was simply carried around in his pocket and spent, according to his statement. He states also that he gave Mr. Jones' attorney, who advised Jones about the loan and the papers evidencing it, a commission of fifty dollars for arranging the same.

A little later Jones decided to purchase this property from Kemp. The plaintiffs had the foresight to take the depositions of these two men before the trial of the action and to exclude one from the room while the other was testifying. It is exceedingly interesting, in a search for the truth in this case, to read these two depositions together. And it is because of the interest and illumination that lies in this exercise that this opinion can give no adequate idea of the content of this record taken as a whole and fitted together. True, their statements are in agreement as to the payment of the consideration by Jones, his lack of any notice of Garratt's equities, etc., but upon events and details upon which questions could not have been anticipated, they are radically different. Take, for instance, the matter of the prospective purchase by Mr. Jones. He tells us that Mr. Kemp came into his office and said he wished to sell the property and his wife had suggested that perhaps Mr. Jones, being a sportsman, would purchase it for deer hunting; that Kemp was a "born salesman" and gave a graphic account of the hunting and fishing upon the place; that Jones said he would look at the place and if it was as described, he would buy it. Mr. Kemp, however, did not recall this incident. He narrated that he and Mr. Jones started down to the property to hunt; that on the way to Santa Rosa he stated he would

probably sell the property; that Jones, thereupon, said he might buy it if it suited him; that at this time Kemp had with him a deed to the property conveying the same to Jones and signed by himself and wife before a notary public, which had been prepared upon the possibility that, somehow, he might sell the property to Jones. Although this idea came to Mr. Jones as they were riding along the highway, it had taken form sufficiently when they reached Santa Rosa to cause Jones to go to an abstract company and deposit his check for nineteen hundred dollars, which was to be the balance of the purchase price over and above the amount previously advanced on the mortgage. Kemp also deposited his deed and the abstract company was instructed to hold these papers until further notice from Jones. They then proceeded to the property and spent an hour or so there. Jones did not know the exact boundaries, but he was satisfied and the two returned to San Francisco. We must not forget that before this "hurry-up" transaction Jones had been told of the attempted criminal prosecution of Kemp by Herrick over this property and he also had the preliminary statement of the abstract company pointing out the defect in the deed from the corporation to Kemp and suggesting the execution of another deed, but Jones was not concerned about either of these important matters; his naive simplicity had returned.

It is impossible to ascertain from the conflicting statements—conflicts not only as between the parties, but in the statements of either standing alone—what was actually paid for this property, but including the amount asserted to have been advanced previously, it is claimed to be something between three thousand two hundred dollars and three thousand five hundred dollars.

Respondent collects in his brief various portions of the record upon which he seeks to charge Jones with constructive notice of Garratt's equities from his continued possession of the property, based upon the fact that when Jones visited the property before completing the alleged purchase, Garratt had some sheep pastured there and some personal property in the cabin upon the land. It is sought by means of this evidence to bring the case within the rule of *Pell* v. *McElroy,*

36 Cal. 268.   On the other hand, appellant considers this evidence, piece by piece, and demonstrates, to his satisfaction, that it is not sufficient to charge Jones with constructive notice.   But the judgment need not rest upon that phase of the case alone.   It may rest upon the bad faith of appellant in acquiring the record title of the property.   Now, it is obvious that Jones' bad faith, if any, is a matter which is most difficult for the plaintiffs to demonstrate.   The situation is akin to the cases where fraud is established by indirect evidence, because of the inherent impossibility of proving it directly.   We hesitate to discredit the testimony of any witness and we should not do so in this case if the trial court, in watching the witnesses upon the stand, had not reached a conclusion which even the cold printed pages seem to justify.   [2] It is our duty to uphold the findings of the trial court wherever possible.   The trial court is better able to judge of truth, from its personal contact with the witnesses, than are we, and when our impression from the printed record is so exactly in harmony with the conclusion drawn by the trial court from its point of vantage, neither our inclination nor our duty permit us to reverse a judgment.

It is interesting to observe that at the time of the trial the testimony of Mr. Kemp and Mr. Jones was rather carefully harmonized, in marked distinction to the divergence in their depositions taken earlier when the transactions were fresher in their minds.   It is also significant to observe how directly and intelligently Mr. Jones and Mr. Kemp were able to answer questions which might have been anticipated in an action of this character, and how incoherent and rambling and "out of character" are their answers in the record upon other matters.   The respondents have printed examples of this in their brief, and they would be pertinent here along with the numerous other matters we have mentioned and a great many additional circumstances appearing in the record, if time and space permitted of their inclusion.

[3] However, we think we have said enough with reference to the record before us.   No specific thing or things warrants the conclusion of the trial court, we concede that

to the appellant; but the entire record, each part taken in connection with each other part, compels such conclusion.

The judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred.

Appellant's petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 4, 1925.