[Civ. No. 672. Fourth Appellate District.—April 28, 1933.]

IDA MAE DREBLOW MILLER, Respondent, v. FRANK E. FORSTER, Appellant.

Duckworth & Harrison for Appellant.

Emery B. Tyler and John A. Hadaller for Respondent.

VAN ZANTE, J., *pro tem.*—This is an appeal by the defendant from a judgment rendered in favor of the plaintiff in an action to declare a trust. It is alleged in the complaint that the plaintiff is a daughter of Edith Dreblow Forster, and a stepdaughter of defendant Frank E. Forster; that her mother was married to defendant on the seventh day of September, 1928, and died in San Bernardino County on the seventh day of December, 1928, leaving an estate of real and personal property in that county; that on the thirteenth day of December, 1928, defendant filed his petition for letters of administration in which he named himself and plaintiff as heirs at law; that thereafter defendant was appointed administrator of the estate of Edith Dreblow Forster, and filed in the probate proceedings of said estate his verified inventory and appraisement showing that the value of the estate amounted to the sum of $18,831.37.

Defendant's first contention is that the complaint does not state facts sufficient to constitute a cause of action. Paragraph six of the complaint reads as follows: "That on or about October 17th, 1928, said defendant entered into a parol agreement with said Edith Dreblow Forster, his then wife, and who is now deceased, that in the event of the death of said Edith Dreblow Forster, all of the separate property of which she died possessed, should become the property of the daughter of said decedent, which daughter is the plaintiff herein; that defendant then and there further agreed with his said wife that he would not at any time, nor in any manner, make any claim whatsoever to any of the property so owned by the wife, and that he would take such steps and do such things. as were necessary to have said property properly distributed to said daughter, the plaintiff herein. Plaintiff alleges that said defendant en-

tered into said agreement and made said promises with the false and fraudulent intent of deceiving said decedent, and of lulling her into a sense of false security, and of thereby preventing her from making some writing wherein she would properly and effectively convey to plaintiff all of her said separate estate; plaintiff alleges that at said time, said defendant entered into the said agreement secretly intending not to perform the same nor carry it out after the death of said Edith Dreblow Forster. Plaintiff further alleges that the said Edith Dreblow Forster believed the said defendant, then her husband, relied on the said agreement and promises, and was deceived thereby; that had she known of the false intentions of defendant at said time or thereafter during her lifetime, she would have taken steps to properly convey to plaintiff all of her separate estate, free from any claim whatsoever of said defendant.''

It is alleged in subsequent paragraphs of the complaint that on numerous and divers occasions, both before and after the death of plaintiff's mother, defendant promised plaintiff that he would hold the property of said decedent in trust for plaintiff and would make no claim whatsoever to any of it at any time; that defendant falsely, fraudulently and with intent to deceive and cheat the plaintiff and the court, filed his petition for letters of administration alleging therein that he and plaintiff were heirs at law of the decedent and omitted therefrom any and all statements and allegations with reference to the agreements made between himself and said decedent; that on the twenty-second day of January, 1930, defendant, pursuant to the false and fraudulent representations obtained an order of court setting aside to him household goods and personal effects appraised at $200.

Unmistakably the allegations in the complaint are allegations of fraud practiced by defendant on plaintiff and her mother, as alleged in the complaint, and but for such fraud on the part of the defendant and misplaced confidence by reason of their relationship, on the part of the plaintiff and her mother, all the property of the decedent would have been willed or deeded to plaintiff. We think the allegations in the complaint are sufficient to show a constructive fraud and cause to have defendant declared an involuntary trustee of the property involved in this action for the use of the

plaintiff and that the complaint states facts sufficient to constitute a cause of action. (*Jones* v. *Jones,* 140 Cal. 587 [74 Pac. 143]; *Lauricella* v. *Lauricella,* 161 Cal. 61 [118 Pac. 430]; *Cooney* v. *Glynn,* 157 Cal. 583 [108 Pac. 506]; *Brazil* v. *Silva,* 181 Cal. 490 [185 Pac. 174, 178]; 25 Cal. Jur. 163–166.) ▇ Nor can it be contended that this action was prematurely brought. The complaint does not disclose any attempt to interfere with the administration of the estate, nor to obtain possession of the property involved. This is simply an action to have the administrator declared a trustee of the property which he claims as an heir. It is held in the case of *Brazil* v. *Silva, supra,* that ''an action to impose a trust because of fraud could be maintained as soon as the wrongdoer consummated his fraud and obtained the legal title to the property involved''. The complaint shows that defendant claimed to be an heir and actually had procured an order of the probate court setting aside to him all of the household goods and personal effects of the decedent.

▇ 'The defendant's next contention is that the court was without jurisdiction to determine the· issues in this case. The defendant did not raise this question by demurrer nor in his answer and we think he has waived his right to raise it on appeal. We think the authorities, including two cases, *Brazil* v. *Silva, supra,* and *Simons* v. *Bedell,* 122 Cal. 341 [55 Pac. 3, 4, 68 Am. St. Rep. 35], on which he relies, are against his contention. We refer to the above quotation from the case of *Brazil* v. *Silva, supra.* In the case of *Simons* v. *Bedell, supra,* the Supreme Court said: ''We are not prepared to say, however, that the court was without jurisdiction, and as all parties seem to have treated the matter as properly brought before the court we shall so treat it.''

''This court will not upon appeal review the conclusions of a trial court as to facts essential to its jurisdiction, concerning which such court was vested with the power to hear and determine, at the instance of a party who has appeared in that court in the action or proceeding, and has omitted there to in any way urge his objection, but has proceeded therein upon the theory that the court had jurisdiction.'' (*Estate of Latour,* 140 Cal. 414, 425 [73 Pac.

1070, 1074, 74 Pac. 441]. See, also, *Estate of Dombrowski*, 163 Cal. 290, 297 [125 Pac. 233].)

■ Defendant's next contention is insufficiency of the evidence to justify the decision, findings and judgment. His first objection is to finding number five, which reads as follows: "The court finds that on or about the 27th day of September, 1928, and again on or about October 15, 1928, said defendant entered into a parol agreement with said Edith Dreblow Forster, his wife, that in the event of the death of said Edith Dreblow Forster, all of the separate property of which she died possessed should become the property of the daughter of said decedent, which daughter is the plaintiff herein; that said defendant then and there further agreed with his wife, the said decedent, that he would not at any time, nor in any manner make any claim whatsoever to any of the property so owned by his said wife, and that he would take such steps and do such things at her death as were necessary to have said property properly distributed to said daughter, the plaintiff herein, and that said agreement was concurred in by defendant's wife, Edith Dreblow Forster, and said agreement remained in full force and effect, and was never revoked."

It is defendant's contention that plaintiff has proven only an antenuptial agreement. If the record disclosed only evidence of promises made by defendant to plaintiff and her mother and agreements made between defendant and plaintiff and her mother we would readily agree with defendant. But we find that these promises and agreements were renewed subsequent to the marriage of defendant and plaintiff's mother. Plaintiff testified as follows: "Q. Well were you present on an occasion in Mr. Holcomb's office on or about the 15th day of October, 1928? A. I was. Q. When Mr. Forster and Mrs. Forster, your mother, Mr. Holcomb, and Lloyd Martin and Mrs. Martin were present? A. Yes. Q. All together in Mr. Holcomb's office? A. Yes. . . . Q. Tell what took place there? A. We were sitting there discussing the transaction and Mr. Forster now and then would say something to my mother, and in general to everyone that was there, and finally Mr. Holcomb became rather impatient and he said to Mr. Forster, 'What have you to do in this? What business have you to say anything in this transaction?' And Mr. Forster was quiet a

minute and then he said, well he didn't have any interest in the transaction except to advise his wife, Mrs. Forster, and in case anything should happen to her that her property was to go to me. Q. He said that on that occasion? A. Yes. Q. And did your mother hear that? A. Yes. Q. What did your mother say in reply? A. Nodded her head. . . . Q. All right. Now, after she died did you have a conversation then with Mr. Forster relative to his intentions regarding her property? A. Yes. Q. Who was present? A. Well my aunt was there. . . . Q. Now just relate the conversation? A. Well, Mr. Forster stated to my aunt—they were talking about things in general—and he stated to my aunt that he didn't intend to take any of Dreblow's money, and my aunt complimented him then and said she certainly did appreciate his saying that; and she told him also there was only one man in a thousand that would do that. . . . Q. You knew your mother had made a will, did you not? A. Yes. . . . Q. Did you go east with your own money? A. I went with the money Mr. Forster gave me. Q. Mr. Forster advanced you the money? A. Yes. Q. How much did he advance? A. $200. Q. How long did you remain in the east? A. I remained from December until the last of August. Q. You remained from December, 1928 until the last of August, 1929? A. Yes, sir.''

The following is a part of a letter, dated May 5, 1929, plaintiff's exhibit, written by defendant to plaintiff's aunt in regard to plaintiff. ''But I think she ought to stay with you and go to work; and earn her living; she is old enough now to do that. I don't know where she is going to get the money to travel on; I am not going to send it to her; now that she is through school; I am going to pay the debt on that house and when the estate is settled; then she will have . some money that she can spend in traveling if she wants to. I hope that you won't think I am too arbitrary in this matter; but it is the way I look at it from here. I know that she would be a whole lot safer under your care than she would be out here; away from your influence.''

Sadie Miller, a witness for the plaintiff, testified as follows: ''Q. Mr. Forster was present at the time? A. Yes, sir. Q. Will you just state to the court what this conversation was? A. It was in substance that Mrs. Dreblow, or

Forster then, had made out her will leaving all of the estate, property and money that Mr. Dreblow had left her, to her daughter Ida Mae, and that if she passed on Mr. Forster was not to have any of it, and Mr. Forster said at the time that that was perfectly true and that he did not want any of it; that that had been the agreement between them before they married.'' Mrs. Helen Roberts, a witness for plaintiff, testified as follows: ''Q. Did you have any conversation with Mr. Forster after Mrs. Forster's death? A. Yes, sir. Q. Will you please repeat what the conversation was? A. Well, he said—he was not going to take anything of Mrs. Dreblow's money; that it was to go to Ida Mae; that Ida Mae was to have everything. Q. And do you recall about what time of the day that was? A. That was, oh, I judge, around 7 or 7:30 in the morning. Q. You say that was one day after— A. Next morning. Q. After Mrs. Forster's death? A. Yes, sir. Q. The next morning? A. Yes, sir. Q. And on that occasion he said he did not want any of the Dreblow money; that it was all to go to Ida Mae? A. Yes, sir. . . . Q. I am asking you what conversation you had with this defendant? A. The day that the folks left for the east— Q. Do you know what day that was? A. Around the 17th or 19th of December. Q. That is the same year in which Mrs. Forster died? A. Yes, sir. Q. Now, where were you at the time this conversation took place? A. In my home. Q. Just relate what the conversation was? A. Well, he made the remark and said that he was going to take what the law allowed him. Q. And what did you say to that? A. I asked him if the folks knew about it, because I had told the aunt that he was going to leave everything to Ida Mae. Q. And what reply did he make to your question, did the folks know about it? A. He said they knew what the law was.''

The defendant testified as follows: ''Q. But in Mr. Harrison's office you were informed that because of the fact that the will was drawn before Mrs. Forster married you, that the terms of the will were inoperative, isn't that true? A. I believe that is true. . . . Q. The relationship between yourself and your wife was always agreeable and harmonious? A. Yes, sir. Q. You got along well together? A. Yes, sir. Q. Never any trouble between you, no disputes of any kind?

A. No, sir. Q. You had confidence in her and she in you?
A. Yes, sir."

In his petition the defendant named himself and plaintiff
as heirs at law of decedent. This petition is made a part
of plaintiff's verified complaint and the allegations therein
are not denied in the answer.

There is considerable other evidence in the record of the
same character as that quoted above. However, we think
the evidence quoted is substantial and supports the finding
number five, and the other findings to which objection is
made on the ground of insufficiency of the evidence. We
think the evidence quoted shows, either directly or by infer-
ence, fraud practiced by defendant, reliance by the plaintiff
and her mother on defendant's promise; and that, but for
such fraud, plaintiff's mother would have willed or deeded
the property involved to her. "As in other cases, every in-
tendment is in favor of the finding made. Such finding is
not to be overthrown on appeal unless it is very plain to the
appellate court that the conclusion reached cannot be sup-
ported on any rational view of the testimony." (*Lewis* v.
*Lewis*, 167 Cal. 732, 733 [141 Pac. 367, 368, 52 L. R. A.
(N. S.) 675]. See, also, *Taylor* v. *Kelley*, 103 Cal. 178 [37
Pac. 216]; *Garratt* v. *Automotive Finance Corp.*, 71 Cal.
App. 534 [235 Pac. 745].)

█ Defendant's last contention is that rulings of the
trial court were prejudicial to him. He bases his conten-
tion on that portion of the record reading as follows: "Q.
I show you this and ask you if this is the deed upon which
you acquired this property? A. Yes, sir. Mr. Hadaller:
We object to the introduction of this deed as incompetent,
irrelevant and immaterial and not within the issues. We
are not contesting this deed. Mr. Harrison: The point is
this: It is a joint tenancy deed and according to the testi-
mony of the daughter a thousand dollars of the mother's
money went into this property, dated the 16th day of No-
vember, 1928, after a lot of the so-called conversation. I
think it is material to show intent and the state of the
parties' minds. The Court: The property is not in question
of course. Mr. Harrison: According to the testimony of
the daughter a thousand dollars of the mother's money went
into that property and that act itself shows how these par-
ties were handling their money. The Court: It is not in

question here. Mr. Harrison: I believe it is material as to the question of intent and of fraud that they have alleged here. The Court: I cannot see that it is. It is not in question here. If the wife contributed a thousand dollars to the purchase price of that she had a right to do so. Mr. Harrison: That is true but it goes to show the state of mind or the acts of the parties that speak louder than words. The Court: It seems to me, if it is anything, it is evidence against your side of the case." We agree with the ruling made by the trial court.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 22, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 26, 1933.