[L. A. No. 17956.   In Bank.   Feb. 27, 1942.]

MILTON H. FELD, Respondent, v. CONTINENTAL CASUALTY COMPANY (a Corporation), Appellant.

Crider, Runkle & Tilson, Clarence B. Runkle and Joe Crider, Jr., for Appellant.

Herman A. Bachrack for Respondent.

HOUSER, J.—This appeal has been taken by the defendant insurance company from a judgment in favor of plaintiff in an action for declaratory relief and reinstatement of a policy of insurance which was cancelled by the insurer for nonpayment of premium.

The question presented for determination is whether an insurer is estopped to declare a forfeiture where the premium has not been paid until after the grace period therefor has elapsed—the delay in payment having been due to the fact that no notice of the premium date was mailed to the insured, although the insurer had followed a custom of mailing such a notice prior to the date the premiums became due.

The policy was executed on March 24, 1921, in the State of Missouri. It provided for indemnity to the extent of $400 a month against "loss of time" caused by bodily infirmity, and premium in the sum of $120 was due annually on or before March 24, with a thirty-one day grace period thereafter. In 1935 plaintiff, who was then residing in New York City, notified the defendant company of a change in his address to 25 Central Park West, New York City. A short time later he moved to Los Angeles, California. Before doing so, he sent a notice to the New York City Post Office requesting that mail addressed to him at 25 Central Park West in that city be forwarded to the office of the Monarch Theatres, Inc., at 1270 Sixth Avenue, in the city of New York. Plaintiff was the retiring president of that corporation and as such he instructed one of its employees to open all mail sent to him at that address, and to forward to him at

Los Angeles all communications relating to insurance premiums, etc. During the ensuing three years notices of the date when premium was due each year were sent by the defendant insurer to plaintiff and were received by him at Los Angeles through those channels. However, in the year 1939, plaintiff did not receive a premium payment notice from the defendant through the mail or otherwise. He asserted that due to the defendant's failure to send him a notice for that year the matter of payment of the premium was not called to his attention until May 6, 1939, when in looking over some of his personal papers and effects he found memoranda which reminded him of the fact that the premium for 1939 had become due on the previous March 24. Thereupon he immediately mailed his personal check to the defendant insurance company for the full amount of the 1939 premium, which, as heretofore indicated, was rejected by the insurer who shortly thereafter declared the policy lapsed. At the defendant's request plaintiff then executed an application for reinstatement, which also was rejected by the insurer. Thereafter the present action was instituted by plaintiff, who deposited in court the amount of the yearly premium for 1939.

The trial court found that plaintiff had made prompt payment of the premiums each year when due on the policy from 1921 to 1939; that ever since 1921, and for a period of 17 years, the defendant had followed the custom of sending to plaintiff each year, several weeks before the premium became due, a notice of the due date of the premium, and that plaintiff had relied on such custom in making the annual premium payments; that preceding the 24th of March, 1939, the defendant had prepared the customary premium notice for plaintiff, but that it was not sent to him, nor did he receive any such notice, his failure in that respect being due to no fault of his own; and that solely as a result of the defendant's failure to mail the notice plaintiff did not make the 1939 payment within the grace period. The court also found that the defendant had not manifested an intention to depart from its custom with respect to the 1939 notice; that plaintiff's tender of the year's premium after lapse of the grace period was made within a reasonable time; and that the defendant had suffered no loss by reason of the 12 days' additional time taken by plaintiff in which to pay the premium after expiration of the grace period.

The defendant insurer contends there was insufficient

evidence to support the findings that (1) defendant did not mail the 1939 notice to plaintiff; (2) that such failure was the sole reason for nonpayment of the premium; and (3) that plaintiff's failure to receive notice was without fault on his part. Each of those claims has been resolved against the defendant either by an express or an implied finding of the trial court.

The evidence on which such findings were based includes the testimony of one of the defendant's employees to the effect that some time in February, 1939, there was placed on her desk a notice covering premium payment on plaintiff's policy, which she enclosed in an open-faced envelope and laid in a mailing basket on her desk; that she did not know what happened to it thereafter, although had the usual office routine been pursued the envelope would have been taken from her basket to be stamped and sealed in the mailing room and ultimately would have reached the United States mails; and that to her knowledge no such envelope was returned through the mails to the defendant's office. Another employee of the defendant testified to the routine procedure followed by the insurer in its mailing department, by which outgoing mail reached the postal channels; but there was no evidence which showed that a 1939 premium payment notice addressed to plaintiff was actually mailed at the time it was assertedly prepared, or thereafter, nor that the routine mailing procedure was followed on or about the date of such preparation for mailing of the notice. In addition thereto, the employee of the Monarch Theatres, Inc., in whose care plaintiff had placed the reforwarding of matters relating to insurance policies, etc., testified that no premium payment notice for 1939 addressed to plaintiff was received at the office of the Monarch Theatres, Inc., New York City.

With respect to the evidence adduced in support of the finding that plaintiff's failure to pay the premium was without fault on his part, the defendant contends there was no assurance that plaintiff would have received a notice had it been mailed to him; and that there was nothing to show his request for a rerouting of his mail would be carefully observed by the insurer more than three years after it had been notified of the New York address to which plaintiff desired notices to be sent,—the same period having elapsed since the time of plaintiff's notification to the postal authorities to forward his mail from such address to that of the Monarch

Theatres, Inc. In that connection the defendant contends plaintiff made no showing that he had ever renewed his forwarding order with the post office and that a request to forward mail to another address is limited by postal regulation to a period of two years. However, the provisions of the regulation referred to, as set forth in the defendant's brief, do not show the observance of a forwarding order by the postal authorities to be necessarily limited to such period of time—although they indicate that such observance is mandatory during the two-year period. In any event, whatever may be the rule or general practice of the postal authorities with respect to the observance of forwarding orders, there was evidence presented in this case that plaintiff's order was complied with by the postal authorities during 1939, and that plaintiff received mail in Los Angeles during that year which had been forwarded to him by the employee of the Monarch Theatres, Inc., in New York City. Moreover, the question whether negligence existed on the part of plaintiff in having arranged for the forwarding of his mail in the manner indicated, even if pertinent to the issues here involved, would have been one of fact for the trial court,—as were the questions whether the defendant failed to mail the notice in 1939, and whether such failure was the sole reason for nonpayment of the premium within the grace period. But the question of plaintiff's negligence (if any) in the respect referred to is not involved in this case,—the trial court having found as a fact, on substantial evidence (which to some extent was conflicting), that the defendant did not mail the 1939 notice to plaintiff, and that the insurer owed him the duty to send such notice.

In that connection, the defendant's principal contention is that where, as here, the policy specifies the date when premiums are due, and there is assertedly no showing of fraud or negligence on the part of the insurer in having failed to mail a premium payment notice, such failure is not a sufficient excuse for nonpayment of the premium—even though in previous years the insurer has followed the custom of mailing notices in advance of the premium due date. Plaintiff contends the great weight of authority is to the contrary and, in particular, that such contrary rule has been followed in the State of Missouri, the laws of which jurisdiction were regarded by the trial court as controlling here—the parties having proceeded to trial on that assumption.

Plaintiff's contention in that respect is correct. The Supreme Court of the State of Missouri considered the question here in issue at considerable length in the case of *Missouri Cattle Loan Co.* v. *Great Southern Life Ins. Co.*, 330 Mo. 988 [52 S. W. (2d) 1, pp. 9-10], and in its opinion rendered therein the following statement was made:

"The authorities are not uniform on the question of whether or not a custom of notifying the insured when the premium will fall due, such as the insured has reasonably come to rely upon, will amount to a waiver of the requirement of payment on the precise due date or estop the insurer from declaring a forfeiture for nonpayment when the customary notice has not been given and the insured has not been notified that the custom is to be discontinued. The rule supported by the greater weight of authority, and which we think most consonant with reason and justice, is thus stated in Joyce on The Law of Insurance (2d Ed.), volume 3, section 1332: 'If a life insurance company has been in the practice of notifying the insured of the time when the premium will fall due, and of the amount, and the custom has been so uniform and so reasonably long in continuance as to induce the insured to believe that a clause for forfeiture for nonpayment will not be insisted on, but that the notice will precede the insistence upon the forfeiture, and the insured in consequence put off his guard, such notice must be given, and if not given no advantage can be taken of any default in payment which it has thus encouraged, for the insured is entitled to expect the customary notification; and to mislead the insured by not giving such notice, and then insist upon a strict compliance with the conditions of forfeiture, constitutes, under such circumstances, a fraud upon the assured which the courts have refused in numerous cases to countenance.' Many cases are cited in support of the rule stated. . . . That an insurance company may, by a course of dealing which the insured has been induced to rely upon, create an estoppel to enforce a forfeiture for the insured's failure to pay promptly, notwithstanding the policy provides for such forfeiture, is in effect held in the following cases: *James* v. *Mut. Res. Fund Life Assn.*, 148 Mo. 1, 49 S. W. 978; *Goedecke* v. *Met. Life Ins. Co.*, 30 Mo. App. 601; *Hanley* v. *Life Assn. of America*, 69 Mo. 380; *McMahon* v. *Supreme Tent Knights of Maccabees*, 151 Mo. 522, 52 S. W. 384; *Britt* v. *Sovereign Camp, Woodmen of the World*, 153 Mo. App. 698, 134 S. W. 1073; *Wool-*

*folk* v. *Home Ins. Co.* (Mo. App.), 202 S. W. 627, where the company failed to give promised notice of maturity of premium note. In the last-named case the court cites many cases in support of its holding that the company was estopped from insisting on a forfeiture for nonpayment of the note.''

It is true that in the Missouri decision the court concedes it was not necessary to hold that such custom, reasonably relied on, would alone create an estoppel, for the reason that, in the factual situation there existing,—in addition to the showing that the insurer had followed the custom of mailing premium notices,—it appeared that during the course of correspondence had between the insurer and the assignee of the insured the former had also expressly promised to mail such notices to the assignee. However, the court there directed attention to the fact that in most of the cases which it cited in support of its conclusion ''the estoppel was created by a custom relied upon by the insured and *without an agreement* to give notice or to waive prompt payment of premiums.'' (Emphasis added.) A careful reading of that case discloses the fact that the Supreme Court of Missouri intended to and did give its unqualified approval to the rule which it set forth from the text, Joyce on Insurance Law, *supra.* Also, in Couch, Cyclopedia of Insurance Law, volume 3, pages 2193-4, the following comment is made: ''. . . the greater number of the decisions apparently support the proposition that an insurance company, which adopts and uniformly adheres to the custom or practice of giving notice of payments for such a length of time as leads those insured to believe notice will be given, cannot declare a forfeiture without giving notice, or without previously advising the persons who have relied upon receiving notice that the custom will be or has been discontinued, and, consequently, that a payment within a reasonable time after the premium becomes due is sufficient, where the custom has been to send notice, and none is given.'' (See cases there cited.)

The ruling in the Missouri case, on which the trial court here predicated its decision in favor of plaintiff, has not been disaffirmed since its rendition, and a review of the cases from other jurisdictions shows that the weight of authority supports the rule there recognized and applied.

The defendant also makes the contention, for the first time on appeal, that the laws of the State of Missouri were not necessarily controlling here. However, the record shows

that by its pleadings the defendant conceded that the insurance contract was entered into in the State of Missouri, where plaintiff then resided; and that the insurer made no claim to the trial court that the laws of any other jurisdiction were applicable to the issues presented in this case. Moreover, from the general argument set forth in the defendant's closing brief, it does not appear that the insurer is making the claim therein that the laws of any specific jurisdiction—which conceivably it might have relied on as being controlling—are or were any different from those of the State of Missouri. In the light of those circumstances and of the fact that at the trial of the issues the insurer apparently acquiesced in the trial court's application of the laws of Missouri, the defendant may not for the first time on appeal announce a change of position in that respect. (2 Cal. Jur. 239, 241; *Estate of Hein*, 32 Cal. App. (2d) 438 [90 Pac. (2d) 100]; *Miller* v. *Forster*, 131 Cal. App. 509, 512 [21 Pac. (2d) 678].)

In view of our conclusion that the trial court was correct in ruling that the defendant was estopped to declare a forfeiture of the policy, other questions raised by the defendant in connection with the application for reinstatement, which was executed by plaintiff at the insurer's request, need not here be discussed.

From the foregoing it follows that the judgment should be and it is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Carter, J., and Traynor, J., concurred.

Appellant's petition for a rehearing was denied March 27, 1942.