[Civ. No. 8033. First Appellate District, Division One.—February 23, 1932.]

J. W. BEDFORD, Respondent, v. PACIFIC STRUCTURAL WELDING CORPORATION (a Corporation), Appellant.

Aitken & Aitken for Appellant.

Reseure & Hill for Respondent.

DOOLING, J., pro tem.—This is an appeal from a judgment for plaintiff for $779.47, the balance found by the court to be due for services performed under a contract with defendant at the rate of $95 per eight-hour day. The plaintiff contracted to furnish the necessary equipment and with such equipment to transport the salvaged pieces of

steel from the wreck of the steamship "Coos Bay" in the Golden Gate in San Francisco to the roadway above the ship. After about three weeks defendant terminated the contract on the ground, among others, that plaintiff had not furnished the necessary equipment to do the work as contemplated by the contract.

The trial court found that the plaintiff furnished all necessary equipment, and the sole point on appeal is that this finding is not supported by the evidence. █ It is a commonplace of appellate procedure that every intendment is to be indulged by the appellate court in favor of the trial court's findings, that only the evidence most favorable to the successful litigant is to be considered, that where divergent inferences reasonably may be drawn from the evidence that inference is to be indulged .which will support the trial court's action, and that with all this in mind unless the court can say on appeal that the findings are wholly without substantial support in the evidence they cannot be disturbed. It is not sufficient that upon the same evidence the appellate court might have reached a different conclusion as triers of the facts. The burden is upon the appellant to demonstrate that as a reasonable man the trial judge could not reasonably have reached the conclusion that he did from the evidence before him.

█ This burden appellant seeks to sustain in this case in the following manner: The parties to the contract contemplated that the equipment would be capable of raising approximately sixty tons of cut steel per day, but during the last two days before the termination of the contract under the most favorable conditions plaintiff only raised about seventeen tons per day. This, argues appellant, demonstrates conclusively that the equipment was hopelessly inadequate to remove anything like the sixty tons per day contemplated by the contract. If under the evidence the trial court was bound to find, as claimed by appellant, that the seventeen tons per day raised during the last two days represented the maximum efficiency of the equipment furnished, then the finding attacked manifestly cannot stand.

Plaintiff and his witnesses testified generally that the equipment was able under proper working conditions to raise more than sixty tons per day, but appellant says that this general testimony cannot stand against the uncontra-

dicted testimony of what was actually done. To explain the failure to raise more than seventeen tons per day during the last two days plaintiff points to testimony that instead of being cut in one place near the high line (transport cable) the steel was cut all over the ship which necessitated its being dragged great distances to the place where the high line was fastened on the ship; that there were steel cleats placed every ten feet on the deck of the ship, which interfered markedly with the dragging of the steel to the high line and which might easily have been cut away; and that the steel was cut in smaller pieces than the capacity of the equipment to raise. Specifically it was testified that the equipment had a capacity of four or four and one-half tons per load and that it took fourteen minutes to run the tackle from the shore to the ship and back again with a load of steel and that most of the time was actually taken up with the tackle on the ship dragging the steel to the high line.

Examining the testimony concerning the last two days of operation, in view of this evidence, we find that it was nowhere stated in how large pieces the steel was cut which was removed on those days and nowhere stated where they were located on the ship except that the witness Whitney testified that the pieces of steel removed were nearer the high line than they would be under normal working conditions.

The trial court concluded that the equipment was adequate to raise sixty tons per day. Given pieces of steel of four tons weight apiece at fourteen minutes round trip per load, sixty tons of steel could have been removed in 210 minutes actual running time, or fifteen round trips of the lifting equipment from ship to shore. This would allow 270 minutes per eight-hour day to get the pieces to the high line and unload them on the shore, or eighteen minutes per load for that purpose. The trial court may have concluded that, if the pieces had been cut in that size, the cleats removed from the deck of the ship to facilitate their transportation to the high line and the pieces cut near the high line for a reasonable distance in every direction, after which the high line could be moved to another point and the operation repeated, the equipment could have handled sixty tons per day. We cannot say that such a conclusion finds no sub-

stantial support in the evidence, and with that our inquiry must end.

Judgment affirmed.

Tyler, P. J., and Knight, J., concurred.