[Civ. No. 5860.   Third Appellate District.—January 15, 1938.]

RUTH C. DAVIS, Plaintiff and Appellant, v. HENRY LANE et al., Respondents; SACRAMENTO NORTHERN RAILWAY (a Corporation), Intervener and Appellant.

Brown & Ford for Plaintiff and Appellant.

Loyd E. Hewitt for Intervener and Appellant.

Rich, Weis & Carlin and Richard H. Fuidge for Respondents.

PLUMMER, J.—This action was begun by Ruth C. Davis, plaintiff and appellant, the daughter of Thomas L. Davis, deceased, against the respondents, Paul Kunde, Gene Morrison and Henry Lane, to recover damages for and on account of the death of Thomas L. Davis, occasioned on or about April 14, 1936, in a collision between an electric car belonging to Sacramento Northern Railway, and operated by Thomas L. Davis, and a truck owned by Kunde and Morrison and operated by Lane. The Sacramento Northern Railway intervened in the action and filed a complaint against Kunde and Morrison to recover the amount of damages given to the electric car by reason of the collision. The respondent, Paul Kunde, filed a cross-complaint against the railway company for damages to the truck. No damages were awarded to any of the parties herein. From this judgment the plaintiff, and also the Sacramento Northern Railway, appeals.

After making findings as to the relation of the plaintiff to the deceased, Thomas L. Davis, the amount of his compensation or earnings per month, the damages to the truck, and the damages to the electric car, the court made the following finding, the incorrectness of which furnishes the basis for the appeals just mentioned. The finding challenged is in the following words and figures:

"The court finds the fact to be that at the time and place above set forth, Thomas L. Davis and cross-defendant, Sacramento Northern Railway, a corporation, were themselves guilty of contributory negligence in and about the matters and things in said complaint set forth, in this: That while at said time and place said Thomas L. Davis did blow a whistle at a point from about 750 to about 950 feet from the said crossing, the court finds said Thomas L. Davis to have given said warning in an insufficient time and at an insufficient distance to constitute a timely warning of the approach of said car to defendants Henry Lane and Paul Kunde, and the giving of said warning in insufficient time and at an insufficient distance as aforesaid, was a material, contributing element to the proximate cause of the death of said Thomas L. Davis.''

That this finding is not supported by the evidence and is contrary to any rational conclusion or legal conclusion that can be drawn from the testimony, clearly appears from what is set out in the transcript in this cause. The evidence set out in the appellant's briefs is admitted to be substantially correct by the respondents Lane, Kunde and Morrison.

The record shows that on or about April 14, 1936, at 12:10 P. M. a collision occurred at what is known as ''Harker's Crossing'', a private crossing about two miles northwest of Yuba City in Sutter County, between an electric car owned by the Sacramento Northern Railway, and operated by Thomas L. Davis, now deceased, and a truck owned by the respondents, Kunde and Morrison, and operated by the respondent Lane, an employee of Kunde. The track extends in an easterly and westerly direction. The private road extends in a northeasterly and southwesterly direction. To the east of the crossing the railroad line is straight for over a mile. From a distance 20 feet back from the northerly rail the view of the track is unobstructed all the way to Yuba City (practically two miles). From a point 30 feet measured at right angles north from the northerly rail, but 38 feet from the crossing, the view of the track is unobstructed in an easterly direction for a distance of 875 feet. From a point 40 feet north of the northerly rail and 51 feet from the crossing, the track is unobstructed to the east for a distance of 570 feet. From a point 51 feet north of the northerly rail, and 60 feet from the crossing, the track to the east is unobstructed

for a distance of 445 feet. It was a clear day. The truck and trailer and semi-trailer had just been loaded with a little less than 24 tons of boxed prunes. The truck was traveling in a southerly direction toward the crossing in direct second gear, at a speed of between 4 and 6 miles per hour. The respondent Kunde, who was riding with respondent Lane, the operator of the truck, did not look to the left at any time. The truck could have stopped, according to the testimony, within 7 or 8 feet. The truck, trailer, and semi-trailer was 59 feet long. The testimony shows that the driver, Lane, looked to the east only once before reaching the rails from a point about 30 to 33 feet from the north rail, and testified that he did not see the car. The car was proceeding in a westerly direction at a speed of about 45 miles per hour at the time the brakes were applied. There was a whistling-post 977.3 feet from the center of the crossing, and a switch located 760.3 feet from the center of the crossing. The whistle of the electric car was blown between the whistling-post and the switch, and was continually blown until the time of the collision. The brakes of the electric car were applied at or near the switch. The car signaled for the crossing by giving one long blast just as it passed the whistling-post, and as we have stated, continued whistling until it reached the point of the collision. Neither the driver nor the occupant of the truck saw the car until the cab of the truck was on the track. They testified that they did not hear the whistling of the car until they had reached that point; that the car at that time was about 200 feet away, and that it was the first time they saw the car or heard the whistle. The testimony shows that the driver of the truck did not stop, look or listen before driving upon the track.

The court found, as heretofore shown, that Thomas L. Davis was negligent in not giving timely warning of the approach of the electric car. This, as shown by an excerpt of the court's opinion hereinafter set forth, appears to have been based upon the conclusion that the whistle of the electric car was not blown at a distance of 1320 feet from the crossing, as required of steam locomotives by section 486 of the Civil Code.

A considerable portion of the briefs is devoted to the argument as to whether section 486, *supra,* applies to electric railroads, apparently overlooking the fact that this court, in

the case of *Lininger* v. *San Francisco V. & Napa Valley R. Co.,* 18 Cal. App. 411 [123 Pac. 235], has definitely held that section 486, *supra,* does not apply to electric railways. This decision not having been overruled or modified in any particular by any decision of the Supreme Court, must be held binding upon us upon this appeal, and needs no further consideration, other than to state that any conclusion of the trial court based thereon, as applied to electric railways, in determining the timely distance from a crossing at which the whistle on the car should be blown, is clearly erroneous.

The finding of the court to the effect that timely warning was not given by the sounding of the whistle of the electric car at a distance greater than 950 feet from the crossing, in view of the testimony of the driver of the truck and the respondent Kunde, that they did not hear the sounding of the whistle until the car was within 200 feet of the crossing, is not only illogical but has no basis whatever in the record for its support. To hold, in face of the testimony of the defendants, that the whistle was not heard until the car was within 200 feet of the crossing, that a warning should have been given more than 950 feet from the crossing, is to make a finding and draw a conclusion as to the negligence of Thomas L. Davis which is shown to be absolutely erroneous by the mere statement thereof. That the defendants did not hear the whistle until the car was within 200 feet of the crossing is to preclude absolutely the idea that a whistle blown at a distance more than 950 feet from the crossing would have warned the respondents of the approach of the electric car. The court apparently overlooked what is common knowledge to everyone, that a truck, trailer and a semi-trailer loaded with 24 tons of merchandise would make so much noise when in motion on the highway that the possibility or probability of hearing the whistle without stopping to look and listen would be exceedingly remote. Right here is the reasonable explanation of why the truck driver and his companion did not hear the whistle at a time when they were at a safe distance from the crossing, and when the truck could have been stopped within a very few feet.

The finding of the court, to be upheld, must be based upon some rational view of the testimony. (*Miller* v. *Forster,* 131 Cal. App. 509 [21 Pac. (2d) 678]; *Lewis* v. *Lewis,* 167 Cal. 732 [141 Pac. 367, 52 L. R. A. (N. S.) 675].)

Should it be admitted that Thomas L. Davis should have sounded the whistle prior to reaching the whistling-post, it does not follow that any negligence on his part contributed to the collision. This court, in the case of *Springer* v. *Pacific Fruit Exchange,* 92 Cal. App. 732 [268 Pac. 951], held as follows: "The law is, of course, well settled that before negligence can be actionable, a causal connection which proceeds in an unbroken point to the very point of the infliction of the injury must be shown between the negligent act and the injury, for no matter how negligent a defendant may have been in the abstract a cause of action is not made out unless the negligence is in some way fastened to the particular injury for which recovery is sought."

The same question was before this court in the case of *Ellis* v. *Burns Valley School Dist.,* 128 Cal. App. 550 [18 Pac. (2d) 79], where the rule just stated was affirmed and additional authorities cited.

Not having heard the blowing of the whistle, and not having stopped the truck to look and listen for the blowing of a whistle or the approach of a car, and having testified that they did not hear the whistle until the car was within 200 feet of the crossing, the negligence of the respondents in driving the truck upon the track, which resulted in the death of Thomas L. Davis, and the collision referred to, it is made absolutely plain that there was not, and could not be, any causal connection between the failure of the motorman to sound the whistle of the car farther away than at a point between 950 and 750 feet from the crossing, and any finding of the court that timely warning was not given by the sounding of a whistle is again shown to be without any support in the record, and illogical and unreasonable.

While not a part of the findings, the language of the trial court, as appears in the transcript, shows the erroneous basis for the trial court's reasoning and conclusions. For that purpose we set forth the following excerpt:

"The other thing in this case, is that, under the law, the time notice is required to be given, should be given at a sufficient distance away to have people stand by the place of safety. That the Sacramento Northern Railroad Company, in this particular instance, has maintained, and is maintaining at the Harter Crossing, an invitation to negligence. As I understand it, they need not blow that whistle

until they reach the whistling post, therefore, they put a post there, and if the trainmen complied with the warning, and notice was given at the whistling post, every time they approached the Harter Crossing they are guilty of negligence. Whether the Railroad Company are legally responsible for the death of the motorman, they created a situation which caused his death.''

The cases are so numerous that the violation of an ordinance or a statute to be actionable must have causal connection with the injury inflicted, that we do not deem it necessary to list the same in this opinion.

█ In addition to what we have said, had the driver of the truck and the respondent, Kunde, obeyed the rule of stopping and looking and listening, no collision would have occurred. A little calculation shows that a car traveling at 45 miles per hour would travel approximately 66 feet per second, and that, as shown by the testimony, it would have taken the car more than 12 seconds to reach the crossing, assuming that its speed was not slackened by the application of the brakes, which the testimony shows to have been made. The truck, traveling at a speed of from 4 to 6 miles per hour, was traveling about 7½ feet per second. At the time the car started whistling, the truck was approximately 90 feet from the crossing, and out in the open. Had they stopped and listened they could have not only seen the car, but in all reasonable probability could have heard the whistle being blown when the noise of the heavily loaded truck had ceased to interfere. The whistle on the car was continuously blown while it traveled 550 feet, before the respondents testified that they heard the same; that is, the car had been traveling about 9 seconds while the respondents continued blindly approaching the crossing.

In the light of these facts, the question almost answers itself: What kind of a warning could have been given by the motorman of the electric car to warn the respondents of its approach?

Again, we may ask the question, if the respondents could not hear a whistle blown somewhere between 950 and 750 feet distant, how can it be reasonably concluded that if the whistle had been blown at some point between 370 feet and 570 feet farther away, timely warning would have been given?

The respondents rely upon the case of *Johnson* v. *Southern Pac. Co.,* 105 Cal. App. 340 [288 Pac. 81]. That case has no application to the questions here presented. The testimony was to the effect that no whistle was blown, no bell was rung, and the four corners of the intersection of the street involved were occupied by buildings which obstructed the view. The case of *Rasmussen* v. *Fresno Traction Co.,* 138 Cal. App. 540 [32 Pac. (2d) 1091], is more to the point, where it is held that if the motorman blows the whistle of the car at a distance when the traveler, if listening, could have heard, and continues to blow such whistle up to the time of the arrival of the car at the crossing, the motorman must be held not negligent; likewise, the motorman has a right to assume that the driver of a truck will observe the law of "look and listen" before proceeding to propel his truck upon the track of a railroad company. It is further said in that case, in substance, that one approaching a track has no right not to look or listen because he has heard no signals.

There are two statements contained in one of the appellants' briefs that we think are absolutely supported by the record and conclusive of this cause, to wit: (1) If the occupants of the truck had listened they would have heard the whistle in sufficient time to have stopped the truck before arriving at the track; (2) If they had looked, they would have seen the car in ample time to have stopped, regardless of the whistle.

From what we have said it must be held that the finding of the trial court that Thomas L. Davis, the motorman in charge of the electric car, was negligent, or that any act on his part contributed to the collision, has no support in the record, and is therefore erroneous.

The judgment as to both appellants is reversed.

Thompson, J., and Pullen, P. J., concurred.

On January 19, 1938, the District Court of Appeal, Third Appellate District, amended their judgment and decision herein as follows:

THE COURT.—The trial court in this cause having found the defendants guilty of negligence, from which no appeal has been prosecuted, and having found that the electric car

belonging to the Electric Railway Company was damaged in the sum of $1724 in the collision referred to; and there appearing no testimony in the record showing that the motorman in charge of the electric car at the time of the collision, was in any particular negligent:

It is therefore ordered that the judgment contained in the opinion filed in this cause on January 15, 1938, be amended to read as follows:

The judgment as to both appellants is reversed, and the cause remanded to the trial court with directions to enter judgment in favor of the Sacramento Northern Railway Company, a corporation, in the sum of $1724, and then proceed to determine the damages to which the plaintiff, Ruth C. Davis, may be entitled by reason of the death of her father, caused by the collision referred to.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 17, 1938. Shenk, J., and Houser, J., voted for a hearing.