[Civ. No. 14690. First Dist., Div. Two. Feb. 26, 1952.]

LLOYD L. CURTISS, Respondent, v. NORVELL E. McGOWAN et al., Appellants.

E. C. Mahoney for Appellants.

Saul N. Ross for Respondent.

JONES, J. pro tem.—This is an action to recover a balance on a builder's contract. On October 21, 1947, the appellants entered into a contract with the respondent to build a house on a lot which they owned in Millbrae Highlands Terrace in San Mateo County. The lot cost $3,000 and the price of the house is fixed by the contract at $16,435. Landscaping

and sidewalks are not included in the contract and are expressly excluded therefrom. Work was commenced on October 21, 1947, and completed on June 30, 1948. On July 3, 1948, the owners took possession of the premises, changed the locks on the doors, and deposited in the San Francisco Bank for the account of plaintiff the unpaid balance of the contract price less $1,100. In the meantime plaintiff had recorded a lien against the property for $6,400. This was the balance due before the deposit was made. This action was then instituted to foreclose the lien. Appellants answered denying that the contract had been fully performed and counterclaimed for damages in the amount of $1,100, the amount withheld. Before the case went to trial plaintiff accepted the deposit made for his account, and the case proceeded upon the theory that the contract had been performed except in the particulars alleged in the counterclaim. (See *Thomas Haverty Co.* v. *Jones,* 185 Cal. 285 [197 P. 105].) The trial court denied damages to the defendants on their counterclaim and from the judgment entered against them they prosecute this appeal.

Eleven particulars are alleged in which it is contended the contractor failed to complete his work, viz.: "1. Sliding doors were not installed in dining room; 2. Shoe racks were left out of closets; 3. Fill was omitted at entrance porch; 4. Lot was not graded properly at outside walls of house; 5. Cement troughs for leader drains were omitted; 6. Plans were not followed in regard to quality and size of lumber; 7. Defendants were prevented from selecting finish hardware; 8. Defendants were prevented from selecting shower doors; 9. Roof was not constructed according to plans; 10. Walk was not constructed according to plans; 11. No mirror was installed in Bath No. 2."

It is further alleged that the contractor refused to correct the claimed deficiencies and that the reasonable value of making the corrections and completing the contract amounts to $1,100. The court below found that the sliding doors in the dining room were omitted at the request and direction of the defendants; that the defendants prevented the contractor from supplying the mirror in bathroom No. 2, the shoe racks in the closets, and installing the cement leader drains; and that as to all other matters mentioned in the counterclaim the plaintiff fully complied with the terms of the contract.

Appellants urge no other grounds for a reversal of the judgment than that the findings are not supported by the

438

evidence. They concede that an appellate court may not upset findings of fact if there is any substantial evidence in the record to support them, citing *E. J. Stanton & Sons* v. *County of Los Angeles*, 78 Cal.App.2d 181 [177 P.2d 804], but they make the argument that no facts appear in the record of sufficient substantiality to support the trial court's findings of fact. ■ When such a contention is made the rule is that it is incumbent upon the appellants to demonstrate wherein the deficiency exists. (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].) The appellants herein have not pointed out wherein the record is deficient as they claim, and the judgment must be affirmed.

■ The record discloses that the respondent testified positively and adversely with reference to each specification set out in the counterclaim. In meeting the charge that an overhang of two feet in the roof is provided for in the plans and specifications and that the overhang as constructed is something like 18 inches, he testified: "Q. What kind of a roof did you put on? A. Number one cedar shakes. Q. How much of an overhang was provided for in the plans? A. Well, there was no set overhang there. All of that kind of stuff we had to scale off. I think the roof has an 18 inch overhang. Q. Who was the roofing subcontractor? A. El Camino Roofing Company. Q. Did you make specifications available to them at all stages of the contract? A. They had the plans and specifications. Q. Your testimony is that the plans and specifications were complied with? A. That is right."

The counterclaim charges that the second grade lumber was used in some of the framing and that 10-inch rustic was used instead of 12-inch. With respect to the former the plaintiff testified that once in awhile you will get in a load of five or six thousand feet of lumber a few pieces of number two grade but that it does not matter as long as it is good lumber; that he ordered all lumber in compliance with the contract with respect to grade, size and specification.

As to the rustic he testified: "Q. Now didn't these plans call for 12 inch rustic on the outside? A. They did. Q. Is that what you put in? A. I put in 10 inch. Q. Did you consult him on that change? A. I did. If you will remember . . . there was a redwood strike going on that lasted over a year. We were lucky to get any redwood at all. . . . Well I obtained 1 by 10 redwood which is only two inches difference in the width, certified dried redwood, clear, which

was the only thing obtainable at that time. Q. When did you consult Mr. McGowan about that? A. I guess one of the days he was by on the job. Q. Did he tell you it was all right with him to go ahead with it? A. Yes.''

He also testified that the change in the sliding doors was made pursuant to agreement with the owners.

In the matter of selection of finish hardware and shower doors, item 7, the testimony of the plaintiff is that he paid $25 or $30 more for this hardware than the figure of $100 allowed for these items in the contract and that they were of good quality. As to the shower doors, his testimony is that he told Mr. McGowan to make his selection of these items when he selected his tile and that nothing was done by him. According to the contractor the entrance walk was modified from a curved to a straight walk in order to make it conform to the levels of the house and the sidewalk, the object being to reduce grade in the entrance walk. As he testified ''It would have cost no more to put the curve in it than it would have been to put it straight.'' Built either way the walk would have cost not over $20.

Concerning items 3 and 4, plaintiff testified that he poured the fill soon after the foundation walls were poured and that he graded at the outside walks of the house to the levels specified on the plans.

Installation of the seven cement troughs costing about 50 cents each for leader drains depended upon leveling of the lot in landscaping and when the owners took possession plaintiff was prevented from installing them. He was likewise prevented from installing the shoe racks and mirror by reason of being locked out of the house.

Appellant McGowan testified that the house was built for sale as a $25,000 home. He never occupied it, and within six weeks after possession was taken the property was sold for $23,900. The difference is attributed by appellants to the deficiencies in construction alleged in the counterclaim. However, the lot on which the house was built was never landscaped. From this fact and all of the other evidence in the case the trial court was free to infer that the reduction from the intended price to the actual sales price could as well have been attributable to the lack of landscaping as to the claimed deficiencies in construction.

The judgment is affirmed.

Nourse, P. J., and Goodell, J., concurred.