[Civ. No. 4920. Fourth Dist. Mar. 2, 1955.]

MAE HELM, as Administratrix, etc., Appellant, v. KATHERYN S. HESS, Respondent.

O'Hara, O'Hara & Healy and Kenneth N. Hastin for Appellant.

Frederick E. Hoar for Respondent.

GRIFFIN, J.—This action was brought by plaintiff and appellant as administratrix of the estate of Irene Osgood, deceased, against defendant and respondent Katheryn S. Hess (her second cousin) for the sum of $3,500, claimed to have been loaned by deceased to defendant, prior to her death. It is alleged that defendant acknowledged said indebt-

edness and agreed to pay it, and that only the sum of $75 has been paid thereon.

Defendant answered and denied generally these allegations and alleged that Irene Osgood, during her lifetime, purchased from defendant a joint tenancy one-half interest in certain real property then belonging to defendant for said sum, and that it was agreed that defendant would pay one-half of the rentals therefor to her; that defendant paid $25 per month as rental until Irene's death and that by virtue of her death defendant became owner of the entire interest. After trial of the issues the court found generally against plaintiff's contention and in favor of the defendant. The general question presented is the sufficiency of the evidence to support the findings.

Prior to 1949, defendant owned the property. It was valued at about $7,500-$8,000 and was subject to a note and trust deed for $3,500. Defendant was paying it off at $60 per month. On September 27, 1949, according to a letter offered in evidence by plaintiff, defendant wrote Irene that she was having difficulty in meeting the payments and inquired as to whether Irene would buy up the note and trust deed and let defendant pay her back as rent because "if anything should happen to me . . . all I have goes to you in any event." She therein stated that if she left here "*we* can either sell it or rent it." (Italics ours.) Defendant stated at the trial that she was very close to Irene and discussed all of her (defendant's) troubles with her, including matrimonial difficulties she was having with her then husband.

It appears that on January 11, 1950, Irene gave defendant a check for $3,500. The trust deed was paid off, and on January 13, 1950, defendant conveyed the property to herself and Irene as joint tenants, by grant deed. It was duly recorded on January 17, 1950. On March 4, 1950, defendant wrote Irene a letter enclosing a policy of title insurance dated June 8, 1949, showing title in defendant subject to a trust deed of $3,500, and the joint tenancy deed, in which letter she stated that she was "making you a half owner." She enclosed a check for $40 and inquired "as to how you want the interest worked out on the loan and what per cent." Apparently these papers were found in deceased's safety deposit box with a note reading: "These are the papers that are to be returned when I get out of hock," signed "K".

Apparently, from another letter dated April 12, 1950, defendant enclosed "a small donation from Ed for payment on

the house." It is defendant's claim that these sums represented Irene's interest in the past-due rentals payable to her, which totaled $75, and that she sent the joint tenancy deed and policy of insurance to Irene because she had "divorce trouble coming up" and she wanted her to have everything in case of her death; that the reason she wrote the note enclosed was because she hoped to "buy my property back from Irene"; that the $3,500 check she received was for the deed of the joint tenancy interest and she, defendant, well knew the effects of a joint tenancy deed and that if she died she wanted her property to go to Irene. Irene died on May 3, 1950.

Plaintiff produced witnesses that at the time of her death defendant said: "I owe Irene a lot of money . . . almost $3500", and that she asked: "Will I have to pay that right now, or what will happen"; that she was then told that she should not worry about that because it would all be worked out in the estate. Defendant did not deny these conversations but said she did not "recall" them. Defendant's ex-husband, who was present at the time, said no such conversation took place.

Defendant offered in evidence an affidavit for attachment filed in the instant action wherein plaintiff swore that the contract here sued upon "has not been secured by any mortgage, deed of trust, or lien upon real or personal property." The instructions to the sheriff were to levy upon the real property here in question "belonging to the defendant."

From the complaint and the evidence produced it appears that plaintiff was relying solely on the theory that the $3,500 received by the defendant was an unsecured loan and no attempt was made to plead an equitable cause of action for the declaration of the joint tenancy deed to be a mortgage given as security for the loan and to foreclose said mortgage. If a *loan* of the money was in fact made, plaintiff's evidence indicates that the joint tenancy deed was given as security for such loan. Accordingly, no relief could be obtained by plaintiff in this action upon the pleadings as framed. Section 726, Code of Civil Procedure, provides that there "can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real or personal property, which action must be in accordance with the provisions of this chapter." (See also Prob. Code §§ 706-716; *Wilson* v. *Anderson,* 109 Cal.App. 467, 474 [293 P. 627]; and 8 Cal.Jur.2d 507, § 182.) The trial

court was justified in finding against plaintiff on this ground.

 The evidence as to whether the advancement of said sum was an unsecured loan or was given as the purchase price of a one-half interest in the joint tenancy property is in conflict. The contention of plaintiff that an *unsecured* loan was made is not too substantial. The indication is that if it was a loan at all it was one that was secured by the giving of the joint tenancy deed.

As opposed to plaintiff's theory, as pleaded, it is defendant's testimony, although somewhat uncertain and confusing, that she sold the one-half joint tenancy interest in the property for the $3,500 which she secured from Irene Osgood; that she intended to repurchase this interest from her sometime in the future; and that if she did not do so, upon defendant's death, she wanted Irene to have all of it. This is the contention made by defendant in her answer and likewise the contention of defendant made by her attorney in a letter addressed to plaintiff's attorney when demand was made by him for the payment of said amount to the estate. It does appear that defendant received the money and in turn executed a formal joint tenancy deed of a one-half interest therein. A sufficient consideration is recited. It was duly recorded, delivered to Irene Osgood, apparently accepted by her, and caused to be placed with her properties in her safe deposit box, and the court so found. On its face, the deed purports to transfer such interest by sale. It has been repeatedly held that a deed absolute in form, will not be held to be a mortgage in the absence of proof of an indebtedness to be secured; that clear and convincing evidence is required to prove that a deed absolute in form was given by way of security, and that it is a question of fact for the trial court to determine whether such evidence has been produced. (*Fowler* v. *Case*, 89 Cal.App.2d 140, 146 [200 P.2d 130].) Physical delivery of a deed raises an inference that the grantor is immediately parting with the title. Of course this inference may be overcome by evidence showing a contrary intent. (*Counter* v. *Counter*, 104 Cal.App.2d 786 [232 P.2d 551]; *Knox* v. *Kearney*, 40 Cal.App. 290 [180 P. 661].) Under Civil Code, section 1056, the effect of an unconditional grant deed without reservation from grantor to grantee is to convey a fee simple title upon delivery, divested of any condition on which the delivery is made and which is not expressed in the instrument. (*Security-First Nat. Bank* v. *Leatart,* 75 Cal.App.2d 211 [170 P.2d 687].)

 At the trial plaintiff offered the joint tenancy deed

in evidence. Accordingly, all the allowable presumptions in its favor attached. (*Phillips* v. *Menotti*, 167 Cal. 328 [139 P. 796] ; 15 Cal.Jur.2d p. 511, § 110 et seq.)

Counsel for plaintiff then stated: "The only evidence we have is the evidence of a loan, that is the transaction. We are not attempting in this action to ask the court to construe this deed as a mortgage whatsoever. We feel this deed is completely extraneous to the transaction . . ." Whereupon counsel for defendant raised the point that so long as the deed stood intact it stood as an insurmountable obstacle to plaintiff's suit. Counsel for plaintiff replied: ". . . we are not trying to attack the validity of this deed, we never have . . . the deed is completely extraneous."

We conclude that the evidence produced, together with the allowable inferences and presumptions adducible therefrom reasonably support the finding of the trial court. On appeal, plaintiff is immediately faced with the burden of showing that there is no substantial evidence to support the finding. When the evidence is conflicting, as it is here, the findings based upon that evidence are conclusive and all reasonable inferences are to be indulged in support of them. (*Rolland* v. *Porterfield*, 183 Cal. 466 [191 P. 913].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.