[L. A. No. 25405.   In·Bank.   Oct. 5, 1959.]

DOROTHY M. BURDETTE et al., Appellants, v. ROLLEF-
SON CONSTRUCTION COMPANY (a Corporation)
et al., Respondents.

722

Joseph Schecter for Appellants.

Crider, Tilson & Ruppe, Henry E. Kappler, Milton M. Cohen and Patti Sacks Karger for Respondents.

TRAYNOR, J.—Plaintiffs appeal from the judgment in favor of defendants after a trial before the court without a jury in an action to recover damages for personal injuries sustained by Dorothy M. Burdette (hereinafter referred to as "plaintiff") in falling to the public sidewalk from a point outside her apartment.

The appeal is on an agreed statement of facts. Defendant Hischemoeller, the owner of a lot located at 11305 Biona Drive in the city of Los Angeles, and defendant Rollefson Construction Company (hereinafter referred to as "Rollefson") entered into an agreement wherein Rollefson was to erect a six-unit apartment building on the lot. Rollefson was to participate either in the profit from a sale of the

property or in the rental income, in lieu of a profit over and above the actual cost of construction of the building. Shortly before the building was completed, plaintiff and her husband leased apartment 2 for a one-year term. Defendants had not procured a certificate of occupancy when the Burdettes moved in on October 1, 1956.

The apartment building is situated at the summit of a steep hill that rises 15 to 18 feet above the public sidewalk. To enter plaintiff's apartment, it is necessary to leave the public sidewalk, climb a flight of 10 steps, make a right-angle turn, traverse a private sidewalk that follows the edge of the hill for 30 or 40 feet, and climb a flight of four steps to a platform immediately outside the front door of the apartment. No part of the platform, private sidewalk, or either set of stairs was enclosed by protective guard rails at the time of the accident.

On October 10, 1956, plaintiff, accompanied by a friend, was preparing to leave her apartment. She held the door open for her friend and paused to close the door. The friend had almost reached the top of the flight of 10 steps leading to the public sidewalk when she heard plaintiff's cries, turned, and saw plaintiff lying upon the public sidewalk. Plaintiff has no memory of what occurred after she closed the door until she found herself back in her apartment after the accident. Thus, there were no eyewitnesses to the accident, and the trial court properly found that plaintiff was not guilty of contributory negligence. (*Scott* v. *Burke,* 39 Cal.2d 388, 394 [247 P.2d 313] ; *Gigliotti* v. *Nunes,* 45 Cal.2d 85, 93 [286 P.2d 809] ; *Campagna* v. *Market St. Ry. Co.,* 24 Cal.2d 304, 309 [149 P.2d 281] ; *Gallichotte* v. *California Mut. etc. Assn.,* 4 Cal.App.2d 503, 508 [41 P.2d 349].) Under these circumstances the only reasonable inference is that plaintiff lost her footing and then tumbled down the steep embankment to the public sidewalk below and that a guard rail would have prevented her tumbling to the public sidewalk whether or not it would have prevented her initial loss of footing. The crucial issue, therefore, is whether or not the accident occurred at a place where defendants were under a duty to provide a guard rail.

Defendants contend that the Building Code of the city of Los Angeles required guard rails only for the platform and the four steps leading to it, and that since the accident may have occurred after plaintiff reached the private sidewalk, she has failed to prove that defendants' negligence in not pro-

viding guard rails for the platform and stairs caused her injury.[1]

Plaintiff contends that the building code required guard rails for the private sidewalk as well as the stairs and platform, and that since she fell either from the platform, the flight of four steps, or the private sidewalk, defendants' negligence in not providing any guard rails was necessarily the proximate cause of her injuries.

It is conceded that section 91.3305(g) of the building code required guard rails for the platform and the flight of four steps. ■■ The dispute centers about the applicability of section 91.4404(a), which provides: "Guard Rails Required. Where a floor, roof or deck is accessible from a stairway or doorway and the floor, roof or deck is more than four feet (4') above the adjoining ground or floor level, a protective guard rail shall be provided in such a manner as to separate completely the doorway from the edge of the floor, roof or deck and also enclose all traffic lanes and all equipment requiring periodic servicing." This section was enacted "to safeguard life and limb" (Building Code, § 91.0315) by preventing persons from falling from dangerously high horizontal surfaces to which they have access from doorways or stairways, and it must be interpreted to promote its purpose. The private sidewalk was accessible from a stairway, and on one side it was 15 to 18 feet above the adjoining ground level. It was this lower adjoining ground level, not the ground level on which the private walk rested and which adjoined it on the other side, that was relevant to the application of the section, for it was there that the danger lay. Thus, it is immaterial that the agreed statement described the private walk as being at ground level, for the photographs make clear that the ground level referred to in the agreed statement was not that of the public sidewalk below but that of the adjoining apartment building on which the private walk also rested. ■■ Moreover, even had the parties intended in the agreed statement to define "adjoining ground level" within the meaning of the ordinance, their private agreement could not control its

---

[1]This theory was apparently adopted by the trial court. Thus, after finding that the absence of guard rails around the platform and the flight of four steps was a violation of the Building Code, the court went on to find that ". . . it is untrue that the absence of said handrails or guardrails or the presence of any dangerous or hazardous condition for which defendants, or either of them, were responsible or accountable, was a direct or proximate cause of any fall or other incident which caused injury to the plaintiff, DOROTHY M. BURDETTE." (Findings of Fact, No. 6.)

interpretation. (See *Desny* v. *Wilder*, 46 Cal.2d 715, 729 [299 P.2d 257] ; *San Francisco Lumber Co.* v. *Bibb*, 139 Cal. 325, 326 [73 P. 864].)

■ Defendants contend, however, that the private sidewalk was not a "floor . . . or deck" within the meaning of the ordinance. "Deck" has been defined as "a flat space, resembling or likened to a ship's deck, esp. when exposed to the open air ; . . ." (Webster's New International Dictionary, 2d ed., 1941, p. 680.) "Floor" has been defined as "The surface, or the platform, of a structure on which to walk, work, or travel ; . . . " (Webster's New International Dictionary, *supra*, at p. 970.) The private sidewalk was a flat space exposed to the open air, and it was a platform of the building on which to walk. It resembled a ship's deck in that it was a distinct level area adjoining the building between the floor level above and the ground level below. Like a ship's promenade deck bordered by ship's cabins on one side and the ship's side on the other, it was dangerous if it lacked a railing at its edge. Although it might usually be described as a sidewalk, it was also a "floor . . . or deck" within the meaning of the ordinance reasonably construed to promote its manifest objectives.

■ The private sidewalk was also a "traffic lane" leading from the floor of the platform outside the door to the flight of 10 steps. Section 91.4404(a) requires all traffic lanes to be enclosed by guard rails when a floor or deck accessible to a door or stairway is more than 4 feet above the adjoining ground level. It does not provide that the guard rails may terminate where the traffic lane reaches the edge of the immediate level accessible to the door or stairway, and the only reasonable interpretation is that the rails must continue until the traffic lane reaches a safe level or terminates. Otherwise the ordinance would sanction a trap. A guard rail begets reliance, and its termination suggests safety. A railing that is not coterminous with the peril against which it guards may be more dangerous than none at all. (See *Laird* v. *T. W. Mather, Inc.*, 51 Cal.2d 210, 216, 218 [331 P.2d 617].)

Defendants contend, however, that the court cannot apply section 91.4404(a) to the facts of this case, on the ground that to do so would permit plaintiff to change the theory of her case on appeal. This contention is without merit. ■ Although ordinarily a party may not deprive his opponent of an opportunity to meet an issue in the trial court by changing

his theory on appeal, this rule does not apply when, as in this case, the facts are not disputed and the party merely raises a new question of law. (*Ward* v. *Taggart,* 51 Cal.2d 736, 742 [336 P.2d 534] ; *Panopulos* v. *Maderis,* 47 Cal.2d 337, 340-341 [303 P.2d 738].)

▪ Defendants contend that the trial court's finding that their negligence was not the proximate cause of plaintiff's injuries is supported by the language of the agreed statement that "there is no evidence in the entire record showing or tending to show the cause of plaintiff's injuries." As we have seen, however, there is evidence that compels the conclusion that one cause of plaintiff's injuries was the absence of a guard rail at the place she fell. We cannot assume that by including the quoted language in the agreed statement, plaintiff agreed that her appeal was without merit and that we should disregard the record. (*Palmer* v. *City of Long Beach,* 33 Cal.2d 134, 144 [199 P.2d 952].) The only reasonable conclusion that can be drawn from the record is that the quoted language refers only to the absence of direct evidence of the cause of the injuries or of any evidence of the cause of plaintiff's initial loss of footing. To interpret it to mean that there is no evidence that a guard rail would have prevented plaintiff's tumbling to the public sidewalk 15 to 18 feet below would render the agreed statement self-stultifying, for the only inference that can reasonably be drawn from the record is that a guard rail would have prevented plaintiff's injuries. The trial court's finding that defendants' negligence was not the proximate cause of plaintiff's injuries may be explained by its theory, apparently acquiesced in by plaintiff below, that defendants were negligent only in failing to provide guard rails for the platform and stairway and that there was no evidence that plaintiff did not fall from the private sidewalk. Since it appears as a matter of law, however, that defendants were negligent in failing to provide a railing for the platform, the stairway, *and* the private sidewalk, that plaintiff fell at one of those three places, and that a railing would have prevented her tumbling to the public sidewalk, the trial court's finding that defendants' negligence was not the proximate cause of her injuries cannot be sustained. (*Bissett* v. *South S.F. Belt Ry. Co.,* 67 Cal.App. 325, 328 [227 P. 671] ; *Murray* v. *Southern Pacific Co.,* 177 Cal. 1, 10 [169 P. 675] ; *Traylen* v. *Citraro,* 112 Cal.App. 172, 174-175 [297 P. 649] [hearing denied by this court] ; *Edgar* v. *Citraro,* 112 Cal.App. 178, 180 [297 P. 654] [hearing denied by this court] ; *Gallichotte* v.

*California Mut. etc. Assn.*, 4 Cal.App.2d 503, 507-509 [41 P.2d 349]; *Hession* v. *City & County of San Francisco*, 122 Cal.App.2d 592, 603 [265 P.2d 542]; *Alarid* v. *Vanier*, 50 Cal.2d 617, 621 [327 P.2d 897].)

The judgment of the trial court is reversed.

Gibson, C. J., Peters, J., and Peek, J. pro tem.,* concurred.

McCOMB, J.—I dissent. The majority opinion, in my view, reaches an anomalous result.

First, it is conceded by the plaintiff in the agreed statement of fact that there is no evidence in the entire record showing or tending to show the cause of plaintiff's injuries.

Second, the record discloses a total absence of any evidence as to how the accident occurred. The record merely reveals that plaintiff testified that ''she stepped out of the door on to the platform, turned so that she faced the door, and claims that the last thing she remembers is pulling the door closed. She claims that the next thing she knew she was in her own apartment, which was after the accident had occurred, and after she had been injured.''

Hence, we have the novel result of the majority opinion disregarding the established rule that every intendment and presumption not contradicted by or inconsistent with the record on appeal must be indulged in favor of the judgment of the trial court. (4 Cal.Jur.2d (1952), Appeal and Error, § 559, p. 426; § 571, p. 444.)

In place of this rule, the majority opinion disregards the finding of the trial court that defendant's alleged negligence was not the proximate cause of plaintiff's injuries. In place of such finding, it speculates ''that plaintiff fell at one of those three places, and that a railing would have prevented her tumbling to the public sidewalk.'' This, of course, overlooks the long established rule that the burden is upon the plaintiff to introduce evidence proving the proximate causal connection between the injury or damage complained of and the alleged negligence of the defendant. It is not sufficient that a negligent act of the defendant might have been the proximate cause of the accident. (35 Cal.Jur.2d (1957), Negligence, § 71, p. 577.)

I would affirm the judgment of the trial court, with an opinion reading thus:

Plaintiffs appeal from a judgment in favor of defendants

*Assigned by Chairman of Judicial Council.

after trial before the court without a jury in an action to recover damages for personal injuries suffered by plaintiff Dorothy Burdette (hereinafter referred to as "plaintiff") from a fall onto a public sidewalk in front of the apartment in which she lived.

*Facts:* The present appeal is upon an agreed statement of facts, which discloses that defendant Hischemoeller was the owner of a lot at 11305 Biona Drive, West Los Angeles. He entered into an agreement with defendant Rollefson Construction Company (hereinafter referred to as "Rollefson"), wherein Rollefson was to erect a six-unit apartment building on the lot.

After the building had been completed, Rollefson was to participate in either the profit from the sale of the property or a portion of the income from the property in lieu of a profit over and above the actual cost of erecting the building.

When the building was nearing completion, apartment 2 was leased to plaintiff and her husband for a year's occupancy beginning October 1, 1956, the date upon which they moved into the apartment. The premises, and particularly apartment 2, were shown to plaintiff during the month of September. At that time she was advised that there was no railing yet installed around the platform or stairway leading to apartment 2 but that one would be installed later.

The building was reached by ascending a flight of 10 steps leading from the public sidewalk below the building to a private exterior sidewalk at the top of this stairway. The private sidewalk was approximately 30 to 40 feet in length and was situated on "ground level" immediately in front of plaintiff's apartment. At the end of the 30 to 40-foot walk was a short flight of four steps leading to a small platform, which was immediately outside of the door of plaintiff's apartment. The platform, the steps, and the sidewalk, which extended 30 to 40 feet, all faced and were immediately contiguous to the front yard of the building, which yard sloped down to the public sidewalk for a distance of approximately 15 to 18 feet.

Prior to October 1, 1956, an inspection of the premises was made by the city. Pursuant to the requirement of the city's building department, cement work was redone on the steps and platform sometime between October 1 and October 10, 1956. During that time the workman assisted plaintiff over the new cement.

A contract had been let by Rollefson to a subcontractor

for the fabrication and installation of a railing around the platform and steps. This was to be done after all other work on the platform and steps had been completed.

On October 10, 1956, plaintiff had a friend, Louise Green, visiting her. Plaintiff and Louise Green were leaving plaintiff's apartment. Plaintiff opened the door and held it for her friend to precede her, intending to follow immediately. Louise Green went out the door of apartment 2, stepped on the platform, made a right turn, went down the four steps and proceeded a distance of approximately 30 feet when she heard someone crying and, looking down, saw plaintiff lying on the public sidewalk. Louise Green did not know how plaintiff got to the sidewalk, nor could she recall the position of plaintiff's body with reference to the platform or the small flight of four steps or any portion of the 30 to 40-foot sidewalk. Thus, it was impossible to determine from her testimony, or any other evidence, from what portion of the premises plaintiff commenced her fall.

Plaintiff claimed that she stepped out of the door onto the platform and turned so that she was facing the door; that the last she remembered was pulling the door closed; and that the next thing she knew she was in her own apartment suffering from injuries.

At the above-mentioned times the following ordinances of the city of Los Angeles were in force:

"Section 91.0315. (a) Certificate Required. In order to safeguard life and limb, health, property, and public welfare, every building or structure shall conform to the construction requirements for the Sub-group Occupancy to be housed therein, or for the use to which the structure is to be put, as specified . . . .

"No building or structure or portion thereof shall be used or occupied until a Certificate of Occupancy has been issued therefor. . . ."

"Section 91.3305, Subsection (g) . . . Every exterior stairway shall have a handrail on the outer edge. Stairways more than four feet (4') in width shall be provided with handrails on each side."

"Section 91.4404 (a) Guard Rails Required. Where a floor, roof or deck is accessible from a stairway or doorway and the floor, roof or deck is more than four feet (4') above the adjoining ground or floor level, a protective guard rail shall be provided in such a manner as to separate completely the doorway from the edge of the floor, roof or deck and also

enclose all traffic lanes and all equipment requiring periodic servicing.''

The trial court found that defendants were negligent in failing to provide handrails or guardrails for the steps and platform by the door.

The court also found (1) that the absence of handrails or guardrails did not cause plaintiff to be catapulted or thrown down a decline to the sidewalk or cause her to sustain severe or any personal injuries, and (2) that the absence of said handrails or guardrails, or the presence of any dangerous or hazardous condition for which defendants or either of them were responsible or accountable, was not a direct or *proximate cause* of any fall or other incident which caused injury to plaintiff. It entered judgment accordingly in favor of defendants.

This is the sole question necessary to determine : *Does the record disclose that as a matter of law there was no evidence to sustain the trial court's finding that the proximate cause of plaintiff's injury was not the absence of handrails or guardrails, or any other act of defendants, or either of them?*

*No.* These principles are here controlling :

1. The burden rests on an appellant (plaintiff in this case) to show the insufficiency of the evidence where findings are assailed on appeal as not supported by the evidence. (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550] ;[1] *Munns* v. *Stenman,* 152 Cal.App.2d 543, 555 [4] [314 P.2d 67] [hearing denied by the Supreme Court] ; *Sealite, Inc.* v. *Finster,* 149 Cal.App.2d 612, 619 [7] [309 P.2d 51] ; *Barlin* v. *Barlin,* 145 Cal.App.2d 390, 393 [2]-[3] [302 P.2d 457] ; *Linehan* v. *Linehan,* 134 Cal.App.2d 250, 255 [4] [285 P.2d 326] [hearing denied by the Supreme Court] ; *Helm* v. *Hess,* 131 Cal.

---

[1] In *Nichols* v. *Mitchell, supra,* p. 600, this court said : ''As ground for reversal defendants urge the insufficiency of the evidence to sustain the findings that the realty involved was their community property, and not the separate property of Mrs. Mitchell. Such contention requires defendants to demonstrate that there is no substantial evidence to support the challenged findings. As was stated in the oft-cited case of *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, at page 429 [45 P.2d 183] : '. . . the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' which will support the findings, and when 'two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' (See, also, *Raggio* v. *Mallory,* 10 Cal.2d 723, 725 [76 P.2d 660] ; *Fischer* v. *Keen,* 43 Cal.App.2d 244, 248 [110 P.2d 693] ; *Laherty* v. *Connell,* 64 Cal.App.2d 355, 357 [148 P.2d 895] ; *Wuest* v. *Wuest,* 72 Cal. App.2d 101, 104 [164 P.2d 32].) ''

App.2d 251, 255 [280 P.2d 155]; *Wallace* v. *Thompson*, 129 Cal.App.2d 21, 22 [1] [276 P.2d 108]; *Kirchnavy* v. *Levet*, 127 Cal.App.2d 586, 588 [2] [274 P.2d 161]; *Rosati* v. *Heimann*, 126 Cal.App.2d 51, 54 [2] [271 P.2d 953]; *Furst* v. *Scharer*, 119 Cal.App.2d 605, 610 [5] [260 P.2d 198); *Industrial Indem. Co.* v. *Golden State Co.*, 117 Cal.App.2d 519, 538 [17] [256 P.2d 677]; *Curtiss* v. *McGowan*, 109 Cal.App.2d 436, 438 [240 P.2d 997]; *Trancoso* v. *Trancoso*, 96 Cal.App.2d 797, 798 [2] [216 P.2d 172]; *Cleverdon* v. *Gray*, 62 Cal.App. 2d 612, 619 [8] [145 P.2d 95] [hearing denied by the Supreme Court]; *Estate of Comino*, 55 Cal.App.2d 806, 810 [1] [131 P.2d 599]; *Bedford* v. *Pacific S. W. Corp.*, 121 Cal.App. 162, 163 [1] [8 P.2d 558]; *Bayside Land Co.* v. *Dabney*, 90 Cal.App. 126, 130 [4] [265 P. 566] [hearing denied by the Supreme Court].)

2. In order to warrant a judgment for negligence, the plaintiff must prove (i) that the defendant has committed a wrongful act and (ii) that said wrongful act was the proximate cause of plaintiff's injury. It is not sufficient that the evidence raises merely a conjecture, a suspicion, or speculation that the defendant has committed a wrongful act.[2]

---

[2]In *Nunneley* v. *Edgar Hotel*, 36 Cal.2d 493, 498 [225 P.2d 497], this court said: "Furthermore, no liability can be predicated upon noncompliance with a statutory command if the act or omission had no causal connection with the plaintiff's injury. (*Blodgett* v. *B. H. Dyas Co.*, 4 Cal.2d 511, 513 [50 P.2d 801]; *Wohlenberg* v. *Malcewicz*, 56 Cal. App.2d 508, 512 [133 P.2d 12].) Otherwise stated, '. . . the act or omission must proximately cause or contribute to the injury.' (*Hitson* v. *Dwyer*, 61 Cal.App.2d 803, 808 [143 P.2d 952].) In the Blodgett case, the plaintiff sustained injury from falling down a stairway which, in violation of an ordinance, was not equipped with a center handrail. In affirming a judgment of nonsuit the court said: 'The evidence shows that the lack of the handrail was neither the proximate nor any cause of plaintiff's fall. Any violation of the ordinance by the defendant would, therefore, be immaterial.'"

In *Hill* v. *Matthews Paint Co.*, 149 Cal.App.2d 714, 723 [308 P.2d 865], the court said: "(1) To be entitled to a judgment based on negligence, plaintiff must prove that defendant's act of wrongful omission is the proximate cause of plaintiff's injury. (*Valdez* v. *Taylor Automobile Co.*, 129 Cal.App.2d 810, 821 [278 P.2d 91]; *Holmes* v. *Moesser*, 120 Cal.App.2d 612, 614 [262 P.2d 27].) (2) The burden of proof devolves on plaintiff to show the causal connection between the alleged negligence and the resulting injury. (*Petersen* v. *Lewis*, 2 Cal.2d 569, 572 [42 P.2d 311]; *McKellar* v. *Pendergast*, 68 Cal.App.2d 485, 489 [156 P.2d 950].) (3) Where the negligence proved is not fastened to the particular injury for which recovery is sought, 'the case stands exactly as if no negligence had been proven.' (*Puckhaber* v. *Southern Pac. Co.*, 132 Cal. 363, 364 [64 P. 480]; *Spencer* v. *Beatty Safway Scaffold Co.*, 141 Cal.App.2d 875, 880 [297 P.2d 746]; *Davis* v. *Lane*, 24 Cal.App.2d 400, 405 [75 P.2d 565].) (4) The question of whether plaintiff has sustained the burden of establishing that defendant's neg-

3. Where no evidence, or insufficient evidence, is introduced on an issue, the finding on that issue must be against the party who has the burden of proof. (*Rancho Santa Margarita* v. *Vail*, 11 Cal.2d 501, 543 [15] [81 P.2d 533]; *Estate of McKenna*, 143 Cal. 580, 592 [77 P. 461]; *Walbergh* v. *Moudy*, 164 Cal.App.2d 786, 790 [2] [331 P.2d 234] [hearing denied by the Supreme Court]; *Sullivan* v. *Kantel*, 124 Cal.App.2d 723, 725 [2] [269 P.2d 175].)

Applying the foregoing rules to the facts in the present case, the record discloses that there was a question of fact presented to the trier of fact, to wit, was defendants' failure to provide protective handrails or guardrails the proximate cause of plaintiff's injuries? The trier of fact found that it was not. This finding is supported by the record, for these reasons:

*First*: The agreed statement of fact contains the following: ". . . there is no evidence in the entire record showing or tending to show the cause of plaintiff's injuries."[3]

---

ligence was the cause in fact from which his injury resulted is ordinarily for the trier of the facts. (*Basin Oil Co.* v. *Baash-Ross Tool Co.*, 125 Cal.App.2d 578, 603 [271 P.2d 122]; *Been* v. *Lummus Co.*, 76 Cal.App.2d 288, 294 [173 P.2d 34].) (5) When there is evidence that the injury may be reasonably attributed to a cause for which no liability attaches to defendant, it is proper to find against plaintiff on the issue of negligence."

In Prosser on Torts (2d ed. 1955), page 222, it is said: "On the issue of the fact of causation, as on other issues essential to his case, the plaintiff has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."

(See to the same effect *Burtt* v. *Bank of California Nat. Assn.*, 211 Cal. 548, 551 [2] [296 P. 68]; *Marsiglia* v. *Dozier*, 161 Cal. 403, 405 [119 P. 505]; *Puckhaber* v. *Southern Pacific Co.*, 132 Cal. 363, 364 et seq. [64 P. 480]; *Towle* v. *Pacific Improvement Co.*, 98 Cal. 342, 346 [33 P. 207]; *Holmes* v. *Moesser*, 120 Cal.App.2d 612, 614 [1] [262 P.2d 27] [hearing denied by the Supreme Court]; *Neuber* v. *Royal Realty Co.*, 86 Cal.App.2d 596, 630 [25] [195 P.2d 501] [hearing denied by the Supreme Court]; *McKellar* v. *Pendergast*, 68 Cal.App.2d 485, 489 [2a] [156 P.2d 950].)

[3]On page 3 et seq. of the Agreed Statement appears the following: "On October 10, 1956, plaintiff, Dorothy Burdette, claims that she had a friend, Louise Green, visiting her. Plaintiff and Louise Green were leaving plaintiff's apartment and plaintiff testified that she opened the door and held it for her said friend to precede her, intending to follow immediately thereafter. Louise Green went out the door of Apartment #2, which door entered into the apartment, stepped on the platform, made a right turn, went down the four steps and proceeded a distance of approximately 30 feet, at which time she heard someone crying, and

Where there is an agreed statement of fact, the appellate court will assume for all purposes of reviewing the action of the trial court that the agreed statement contains a correct statement of what took place. (*McMullen* v. *Saunders*, 138 Cal.App.2d 554, 555 [1] [292 P.2d 282] [hearing denied by the Supreme Court].)

In view of the foregoing stipulation as to the facts, the trial court's finding of fact in favor of defendants is supported by the record.

*Second*: Plaintiff testified ". . . she stepped out of the door on to the platform, turned so that she faced the door, and claims that the last thing she remembers is pulling the door closed. She claims that the next thing she knew she was in her own apartment, which was after the accident had occurred, and after she had been injured."

Therefore, under rules 2 and 3, *supra,* plaintiff failed to sustain the burden of proof in the trial court of establishing that defendants' negligent act was the *proximate cause* of her injury.

So far as the record discloses, the proximate cause of plaintiff's fall remains unknown, the cause thereof being merely a matter of conjecture, suspicion, or speculation. So far as the record discloses, she may have fainted, or deliberately jumped, or been shoved off the porch or walk; or her injury may have been proximately caused by a variety of other acts.

Likewise, the record is devoid of any evidence showing where plaintiff left the walk, which was between 30 and 40 feet in length.

---

then looked down and saw the plaintiff down on the public sidewalk. Louise Green did not know how plaintiff, Dorothy Burdette, got to the sidewalk. The plaintiff, Dorothy Burdette, claimed that she stepped out of the door on to the platform, turned so that she was facing the door, and claims that the last she remembers is pulling the door closed. She claims that the next thing she knew she was in her own apartment, which was after the accident had occurred, and after she had been injured. *There is no testimony in the entire record showing how plaintiff, Dorothy Burdette, got to the public sidewalk; there is no testimony or evidence in the entire record to show from what point plaintiff, Dorothy Burdette, left the upper or ground level of the apartment house, i.e., whether she left the upper level from the platform, from the steps, or from the private sidewalk,* all of which abutted the sloping front yard; *there is no testimony or evidence in the entire record tending to show at what place on the lower or public sidewalk the plaintiff was found;* plaintiff's friend, Louise Green, was the only party who testified that plaintiff was on the public sidewalk, and she stated that she did not observe or remember whether plaintiff was in line with the platform, the steps, or the private sidewalk which abutted the top of the slope; *there is no evidence in the entire record showing or tending to show the cause of plaintiff's injuries.*" (Italics added.)

A plaintiff cannot recover where the facts go no further than to establish a possibility that a defendant's negligence was the proximate cause of his injury. (See *Petersen* v. *Lewis,* 2 Cal.2d 569, 572 [2] [42 P.2d 311]; *Hill* v. *Matthews Paint Co.,* 149 Cal.App.2d 714, 724 [11] [308 P.2d 865]; *Spencer* v. *Beatty Safway Scaffold Co.,* 141 Cal.App.2d 875, 882 [4]-[5] [297 P.2d 746]; *McKellar* v. *Pendergast,* 68 Cal.App.2d 485, 489 [4] [156 P.2d 950].)

Clearly, plaintiff failed to sustain in the trial court the burden of proof incumbent upon her to show that any negligent act of defendants was the proximate cause of her injury. Therefore, an essential element of her case was not proven, and the trial court's finding that defendants' negligent act was not the proximate cause of her injury is fully sustained by the evidence.

From the foregoing it is evident that plaintiff has failed to sustain the burden of proof required by rule 1 of showing that the finding of the trial court is, as a matter of law, contrary to the facts disclosed by the record and therefore not sustained by the evidence.

Schauer, J., and Spence, J., concurred.

The petition of respondent Herbert Hischemoeller for a rehearing was denied November 3, 1959. White, J., did not participate therein. Schauer, J., Spence, J., and McComb, J., were of the opinion that the petition should be granted.